863 P.2d 1043

Patricia JOHNSTON, Plaintiff–
Appellant,

v.

SUNWEST BANK OF GRANT COUNTY,
Defendant–Third–Party Plaintiff–
Appellee.

Consolidated with:

Patricia JOHNSTON, Plaintiff–Third–
Party Defendant–Appellee,

v.

Grover WALKER, Third–Party and
Cross Defendant–Appellant.

Nos. 20980, 21115.

Supreme Court of New Mexico.

Oct. 26, 1993.

Filosa & Filosa, Mark A. Filosa, Truth or Consequences, for appellant/appellee Johnston.

Cresswell & Roggow, P.A., Charles W. Cresswell, Las Cruces, for appellee Sunwest Bank.

John W. Reynolds, Silver City, for appellant Walker.

## OPINION

FRANCHINI, Justice.

These consolidated appeals arise from litigation concerning the ownership of a joint bank account and the possible liability of a bank when a subsequent party is added to the account without notice to all parties listed in the original account. In the first

case we determine that the trial court erred when it concluded that Patricia Johnston had an ownership interest in the joint account at the time Grover Walker closed the account and purchased a certificate of deposit in his and Anna Walker's name. In the second case we determine that Sunwest Bank of Grant County's (Sunwest) motion for summary judgment was improperly granted because genuine issues of material fact as to Sunwest's possible negligence existed. We reverse on both appeals.

## I.

Grover and Anna lived together since 1951, pooling their property and holding all of it jointly throughout their relationship. Anna was the mother of Johnston. During the time Anna and Grover lived together they put all of their paychecks into a joint checking account after which they would transfer what funds they could to two other joint accounts. The trial court found no evidence as to the respective amounts deposited into any accounts by Grover or Anna. The only records that showed deposits into the other two accounts were bank statements.

On December 4, 1980, Sunwest Bank savings account No. 13218 was opened with Anna and Johnston's name on the account. Sometime after that date, Grover's name was added to the account. Johnston made no contributions to account No. 13218.

Anna suffered a disabling stroke in May 1990, and died on June 28, 1990. On June 19, 1990, Grover took the passbook for account No. 13218 to Sunwest and closed the account. At that time there was approximately $30,523.37 in the account. With the proceeds of the account, Grover purchased a certificate of deposit in both his and Anna's name as joint tenants.

Johnston sued Sunwest under tort and contract theories, seeking the proceeds of the account. Sunwest brought a third-party complaint against Johnston and third-party defendant Grover for interpleader alleging that two parties had made a claim on a bank account. Both Grover and Johnston answered the third-party complaint,

each alleging that they were entitled to the entire amount. An interpleader order was entered that did not absolve Sunwest of liability at that time. Also, motions for summary judgment were filed by all three parties. The trial court granted Sunwest's motion for summary judgment stating that Johnston had no admissible evidence to support her claim against Sunwest and, therefore, there were no genuine issues of material fact. The other motions for summary judgment were denied, although in its order, the trial court found that account No. 13218 was a joint account with rights of survivorship, and that Grover and Johnston should each receive one-half of the proceeds less any money actually contributed by Grover.

A bench trial was held October 27, 1992, to determine Grover's contribution to the account. The trial court concluded that the monies deposited by Anna and Grover into their jointly owned account were owned equally by them and that Johnston was a surviving joint tenant of the account. The court stated that the legislature, in enacting the statute sections on joint accounts, NMSA 1978, §§ 45–6–101 to –105 (Repl. Pamp.1989), amended by NMSA 1978, §§ 45–6–201 to –227 (Repl.Pamp.1993), did not intend that a holder of an interest in a joint account be able to defeat the ownership rights of the other owner, simply by a unilateral act of one of them immediately prior to the death of another. The trial court also concluded that the monies held in the certificate of deposit were still owned proportionately to the rights of Anna, Johnston, and Grover prior to the closing of the account. Grover, being unable to establish how much money he and Anna respectfully contributed to the account was relegated to the status of joint owner with right of survivorship to the fund. The court equally divided the proceeds between Johnston and Grover.

## II.

*Case No. 21,115*

██ Grover does not object to the trial court's findings of fact. Unchallenged findings of the trial court are binding on

appeal. *Cordova v. Broadbent*, 107 N.M. 215, 216, 755 P.2d 59, 60 (1988). Grover contends that the trial court erred by concluding that Johnston had an ownership interest in joint account No. 13218 at the time he closed it, and that therefore, she was entitled to one-half of the account's proceeds. We agree.

Under Section 45–6–101(D), the definition of a joint account is as follows: "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." Section 45–6–102(A) provides that Sections 45–6–103 through 45–6–105, "[A]re relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts." The relevant account terms here were set out by the signature card. The signature card stated that the signatories were joint tenants and any balance may be withdrawn upon the order of any party or survivor. Thus, Grover was within the terms of the contract when he withdrew the entire amount. The funds were payable to Grover on request. *See Barham v. Jones*, 98 N.M. 195, 197, 647 P.2d 397, 399 (1982).

Although Grover had the right to withdraw the entire amount in the account, we must still determine the individual parties' ownership interests in the account. Thus, while a party may withdraw any or all of the funds in a joint account, "during the lifetimes of the parties and as between themselves, the realities of ownership, the real intention of the parties and the purpose and nature of the account may be shown to determine the interest each has in the account, thus subjecting the one who has deposited none of the funds to accountability and liability." *Carroll v. Hahn*, 498 S.W.2d 602, 607 (Mo.Ct.App.1973) (footnote omitted).

Section 45–6–103(A) provides: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Section

45–6–103(A) is identical to Section 6–103(a) of the Uniform Probate Code. The drafting committee's Comment to Section 6–103 states:

This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make a irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. The assumption may be disproved by proof that a gift was intended.

... The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy.

Unif.Probate Code § 6–103 cmt., 8 U.L.A. 524–525 (1983) (replaced in 1989 by Section 6–211, 8 U.L.A. 311–12 (Supp.1993)). Thus, Section 45–6–103, sets out the ownership rights during the "lifetime of all parties." In contrast, Section 45–6–104 sets out the ownership rights of the survivors to the remaining sums "at the death of a party to a joint account."

The trial court concluded that the legislature did not intend to allow a holder of an interest in a joint account to defeat the ownership rights of the other joint owner simply by a unilateral act. We do not disagree with this concept, where we differ is with its application. Here, Johnston had no ownership interest at the time of the transfer of funds by Grover. At most she had a mere expectation of a right of survivorship.

The accepted findings were that Anna and Grover put all of their paychecks and retirement income into a joint checking account after which they transferred what funds they could into two other accounts; that there were no records other than bank

statements as to what monies went into what account; and that Johnston made no contributions to the account. Applying Section 45–6–103(A), Anna and Grover were the "owners" because they contributed to the account. Johnston was not an "owner" because she contributed nothing to the account and because there was no intent by Anna to make a gift of her funds to Johnston. *See generally Kinney v. Ewing,* 83 N.M. 365, 369–70, 492 P.2d 636, 640–41 (1972) (mother had no donative intent to make a gift when she registered securities in her and her daughter's name and the mother was sole owner of property). Because Johnston had no ownership interest in the joint account during the lifetime of the parties; when Grover withdrew the funds, Johnston lost her right to the funds.

*Case No. 20,980*

■ On March 10, 1992, Sunwest filed a motion for summary judgment. Sunwest argued that Johnston was relying on her deceased mother's comments and letters for her claim and that the evidence was hearsay and inadmissible. In Johnston's response, she admitted the likelihood that her mother's comments and letters were hearsay, but submitted to the trial court that there still existed genuine issues of material fact on her negligence claim based on affidavits from a banking expert and a former employee of Sunwest. The trial court granted summary judgment stating that Johnston had no admissible evidence to support her claim.

Our purpose on reviewing an order granting summary judgment is not to rule on issues of fact, but to determine if material disputed issues of fact existed. *Pharmaseal Lab., Inc. v. Goffe,* 90 N.M. 753, 759, 568 P.2d 589, 595 (1977). We look to whether the movant made a prima facie showing of entitlement to summary judgment. *Koenig v. Perez,* 104 N.M. 664, 666, 726 P.2d 341, 343 (1986). Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary fact which would require trial on

the merits. *Dow v. Chilili Coop. Ass'n,* 105 N.M. 52, 54, 728 P.2d 462, 464 (1986). On review, we consider the whole record for evidence that puts a material fact at issue. *Gardner–Zemke Co. v. State,* 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper. *Id.*

Our review of the record reveals that essential facts in this case are in dispute. These facts concern how Grover's name was added to account No. 13218. Testimony consisting of Anna's comments and letters and comments allegedly made by Anna to Dorothy Youngs, a bank teller at Sunwest, was ruled inadmissible as hearsay. Admissible evidence consisted of two separate signature cards, one signed by Anna and Johnston and one signed by Grover. The one signed by Grover was undated and was unsigned by either Anna or Johnston. Dorothy Youngs testified that Anna accompanied Grover to the bank when he signed the signature card. Notwithstanding the "addition" of Grover to the account, Sunwest continued to send statements to Anna and Johnston only. There was never a written authorization signed by Anna or Johnston authorizing the addition of Grover to account No. 13218. Affidavits were filed establishing that the bank's handling of the signature on account No. 13218 violated Sunwest's own standard procedure and the standard of care in the banking industry.

■ We think the evidence is susceptible to different interpretations. First, it can be interpreted that Anna knew that Grover was being added as co-owner to account No. 13218 because of testimony that she accompanied him when he filled out a signature card. Alternatively, Anna might not have known because she never authorized in writing that Grover be added to the account and the monthly account statements did not name Grover as a co-owner. If equally logical but conflicting inferences can be drawn from matters presented, summary judgment is improper. *See Trujillo v. Treat,* 107 N.M. 58, 59–60, 752 P.2d 250, 251–52 (Ct.App.1988).

Also, we note that Sunwest for the first time on appeal argues that summary judgment was proper because of the lack of proximate cause. We agree that there are questions as to probable cause and damages, yet these issues were not adequately examined below. Johnston contends that if Sunwest had followed proper procedure regarding signature cards, or if the bank sent out monthly statements naming all three parties, Anna and Johnston would have been alerted that Grover was a co-owner. Thus, Johnston contends, her mother or she would have acted accordingly to insure their intent that the account being held by only the two of them was honored. It may be difficult to convince a fact finder that this scenario would have occurred, yet, "where disputed factual issues exit and reasonable minds may reach different conclusions, issue of negligence and proximate cause constitute factual questions for [the fact finder]...." *Blauwkamp v. University of New Mexico Hosp.*, 114 N.M. 228, 236, 836 P.2d 1249, 1257 (Ct.App.), *cert. denied*, 114 N.M. 82, 835 P.2d 80 (1992).

Finally, Sunwest appears to contend that by interpleading the amount in dispute, it has absolved itself of any liability. When granting the interpleader order, the trial court disagreed with Sunwest's theory and reserved Johnston's right to continue her suit against the bank based on theories of liability plead in the complaint. In accordance with SCRA 1986, 1-022 (Repl. Pamp.1992) (rule on interpleader), Sunwest was relieved of any necessity to litigate the ownership of the bank account. On the other hand, Sunwest was not relieved of defending itself from the allegations made by Johnston regarding the addition of Grover to account No. 13218. We agree with the trial court that Sunwest can not avoid issues of liability simply by filing an interpleader action.

For the reasons discussed above, we reverse the order granting summary judgment for Sunwest in Case No. 20,980. In Case No. 21,115 we reverse the court and hold that Johnston was not an "owner" of the account and therefore, was not entitled to one half of the proceeds. Finally, we remand for further proceeding consistent with this opinion.

**IT IS SO ORDERED.**

BACA and MONTGOMERY, JJ., concur.