2005-NMCA-116

120 P.3d 471

**BANK OF NEW YORK, a New York banking corporation, Plaintiff–Appellee/Cross–Appellant,**

v.

**REGIONAL HOUSING AUTHORITY FOR REGION THREE, New Mexico, Region Three Housing Authority, New Mexico, Inc., and Villa Hermosa Affordable Housing Corporation, and Jo An Garcia, Defendants–Appellants/Cross–Appellees.**

**No. 24,128.**

Court of Appeals of New Mexico.

July 5, 2005.

John S. Campbell, Campbell & Wells, P.A., Albuquerque, for Plaintiff–Appellee/Cross–Appellant.

Robert M. Strumor, Hughes & Strumor, Ltd., Christal K. Grisham, Albuquerque, for Defendants–Appellants/Cross–Appellees.

## *OPINION*

ALARID, J.

### BACKGROUND

{1} Plaintiff, Bank of New York (the Bank), is a New York banking corporation. Defendant, Regional Housing Authority for Region Three, New Mexico (the Authority), is an entity organized under New Mexico law for the purpose of providing low income housing. *See* NMSA 1978, §§ 11–3A–1 to –29 (1994, as amended through 1995). Defendants, Region Three Housing Authority, New Mexico, Inc. (Region III), and Villa Hermosa Affordable Housing Corporation (VHAH), are nonprofit corporations created by the Authority. Section 11–3A–9. The Authority owns all of the stock of VHAH. Defendant, Jo An Garcia, is a former executive director

of the Authority and former director and president of VHAH.

{2} The Bank is the successor trustee under a trust indenture executed in 1997 in connection with the issuance and sale of $12,250,000 of Variable Rate Demand Multifamily Housing Revenue Bonds (Via Hermosa Apartments Project) Series 1997. VHAH issued the bonds to fund a low income housing project in Bernalillo County. Pursuant to the trust indenture, VHAH is entitled to an issuer's fee equal to one eighth of one percent of the value of outstanding bonds, payable in monthly installments.

{3} VHAH's articles of incorporation provide that:

The corporation will not afford pecuniary gain, incidentally or otherwise, to its members, directors or officers. No part of the income, profit or net earnings of the corporation will inure to the benefit of, or be distributable to, the directors, or officers of the corporation, or other private persons, except that the corporation may pay reasonable compensation for services rendered, and may make distributions in furtherance of its corporate purposes.

{4} On September 16, 1997, Garcia, Soloman Montano and Thomas Simmons, three of the five members of the board of directors of VHAH, signed an "Agreement of Directors in Lieu of Special Meeting" authorizing an irrevocable assignment of the issuer's fee to Garcia. The "Agreement of Directors" recited that Garcia was owed $90,000 in unpaid back salary and that the assignment would be accepted by Garcia in full satisfaction of any claims by Garcia for "pay or other reimbursement." Montano, signing in his capacity as Vice Chairman of the board of VHAH, executed an "Assignment" "irrevocably assign[ing] all of its right title and interest in and to the '[i]ssuer [f]ee.'" Simmons, signing in his capacity as chairman of the Authority, executed a "Shareholder Consent" to the assignment of the issuer's fee to Garcia. Lastly, Garcia executed an "Acceptance of Assignment," acknowledging her acceptance of the assignment of the issuer's fee "in full satisfaction of any and all claims for salary and any other items for either [VHAH or the Authority]." Garcia began receiving the monthly issuer's fee. As of April 2002, the monthly issuer's fee amounted to $1,267.71 per month, or $15,212.52 per year.

{5} On February 27, 2002, counsel for the Authority wrote the Bank, advising the Bank that:

This will . . . confirm that Ms. Garcia is no longer employed by the Authority or any entity affiliated with the Authority. The Authority has designated the Corporation [Region III] as its exclusive bond issuer and to receive all issuer fees on its behalf. The Authority will be taking official action to replace the board of directors of [VHAH] with the board members of the Authority.

Please cease all distributions to [VHAH] or Ms. Garcia and retain all issuer's fees so that we may submit documentation to prove that the Authority and the Corporation are entitled to receive those fees and not [VHAH] or Ms. Garcia.

{6} On March 7, 2002, counsel for VHAH and Garcia wrote the Bank and counsel for the Authority advising them that:

I do have original documents in my possession, including an Assignment reflecting the notarized signature of Solomon Montano, Vice Chairman, Villa Hermosa Affordable Housing Corporation, an Acceptance of Assignment reflecting the notarized signature of JoAnn [sic] Garcia, a Shareholder Consent reflecting the notarized signature of Thomas Simmons, Chairman, RHA Region III, and an Agreement of Directors in Lieu of Special Meeting reflecting the signatures of Soloman Montano, Thoma Simmons and JoAnn [sic] Garcia. Copies of those documents are enclosed herewith.

The substance of the above-referenced documents is that, on or about September 16, 1997, each of the Authority, Corporation, Villa Hermosa and Ms. Garcia agreed that Ms. Garcia should receive the issuer fees generated by bonds issued on behalf of the Villa Hermosa Apartments as compensation for salary not previously paid to Ms. Garcia and in consideration of her agreement not to sue. Therefore, the documents establish that each of the Authority, the Corporation and Villa Hermosa

have entered into a contract with Ms. Garcia, based on good and valuable consideration, which contract assigns to Ms. Garcia the issuer fees generated by bonds issued on behalf of the Villa Hermosa Apartments.

Based on the foregoing, this letter constitutes Ms. Garcia's demand to [counsel for the Authority] and his clients to cease and desist from further efforts to deprive Ms. Garcia of the benefit of her bargain with the Authority, the Corporation and Villa Hermosa. In addition, this letter constitutes Ms. Garcia's demand that [counsel for the Authority] and his clients cease and desist from further efforts to induce any breach of fiduciary duty on behalf [of] the Bank to Ms. Garcia. Finally, this letter constitutes Ms. Garcia's instruction to the Bank to disregard any further communications from [counsel for the Authority] or his clients, which communications are not in the form of a lawful court order, instructing the Bank to breach its fiduciary duties to Ms. Garcia.

{7} On March 14, 2002, the Bank wrote counsel for the Authority and counsel for Garcia, advising them that

[The Bank] as Trustee, will deposit the Issuer Fee in an escrow account and hold said funds until this dispute is resolved. Prior to disbursement of said funds, [the Bank] will require either a court order or an agreement signed by both parties, directing us to whom the payment should be made.

{8} On March 14, 2002, counsel for Garcia responded to the Bank's letter:

It is undisputed that [the Bank] is a trustee of the issuer fees generated by the housing revenue bonds sold for the benefit of the Villa Hermosa Apartment Project. It is also undisputed that, since at least 1997, [the] Bank has disbursed those issuer fees to Ms. Joanne [sic] Garcia as beneficiary of those funds. It is also undisputed that, as a trustee, [the] Bank owes a fiduciary duty to Ms. Garcia.

A fiduciary duty is a duty of loyalty. Since a fiduciary is obliged to act primarily for another's benefit in matters connected with its undertaking, a fiduciary breaches

this duty by placing his interests above those of the beneficiary. *Moody v. Stribling,* [1999–NMCA–094, ¶ 27,] 127 N.M. 630, [985 P.2d 1210]. In deciding to "deposit the Issuer Fee in an escrow account and hold said funds until [the purported dispute . . .] is resolved," [the] Bank has placed its interests above those of the beneficiary, Ms. Garcia. Specifically, in an apparent attempt to evade its duty to provide the beneficiary with timely receipt of the issuer fees, and [the] Bank's duty to defend the beneficiary's interest in timely receipt of the issuer fees, [the] Bank has voluntarily stipulated to an injunction, enjoining [the] Bank from discharging its fiduciary duty to the beneficiary to make timely disbursements of the issuer fees due to the beneficiary.

As a consequence of [the] Bank's breach of [its] fiduciary duty to Ms. Garcia, [the] Bank is liable to Ms. Garcia for all injuries proximately related to [the] Bank's breach, including, but not limited to, damages and attorney's fees. *Id.* Ms. Garcia will be seeking recourse against the Bank for all of her injuries proximately related to [the] Bank's unilateral decision to cease payment, and escrow of, the issuer fees due to Ms. Garcia.

{9} On April 29, 2002, the Bank filed a "Complaint in Interpleader" in the district court. The Complaint named as defendants, the Authority, Region III, VHAH, and Garcia. The Complaint alleged the Bank's status as trustee under the 1997 indenture; the history of prior payments of the issuer's fee to VHAH c/o Garcia; the Authority's demand that the Bank cease payments to Garcia; and VHAH and Garcia's demand that the Bank continue payments and their threat of litigation if the payments were discontinued. The Bank further alleged that the issuers's fee was claimed by the Authority, Region III, and by Garcia; that the Bank was "not advised as to the validity of the claims of either of these parties and cannot safely recognize either of them"; that the Bank has "no interest whatsoever in the issuer['s] fee"; that the Bank was prepared to pay over the issuer's fee to the person lawfully entitled to them; that Bank was

bringing the action "to avoid multiplicity of lawsuits and to prevent threatened suits and double liability." The Bank requested the following relief: (1) an order requiring the defendants "to interplead in this case and to settle their respective rights to the sums now in the possession of [the Bank] and hereafter to come into the possession of [the Bank]"; (2) an order authorizing the Bank to pay the issuer's fee into the registry of the district court; (3) an order restraining Defendants from "commencing in any court" litigation "to recover the sum that is now in possession of [the Bank] or will hereafter come into the possession of [the Bank], or to recover of [the Bank] any damages for failure of [the Bank] to deliver the sum of money to the Defendants, or either of them"; and (4) an award of costs and attorney's fees.

{10} On May 7, 2002, the district court entered an "Order for Interpleader of Money into the Registry of the Court." In its order, the district court found that the Bank had funds in its possession and would receive funds in the future; that a dispute over the funds has arisen among Defendants; and that the Bank was subject to "claims of multiple litigation and double liability." The order directed the Bank to pay to the court clerk the sum in its possession and any further sums subsequently received by the Bank and directed the clerk to hold them subject to further order of the court. The order directed each of the Defendants, within twenty days from the date the order is served, to "interplead, settle and adjust between themselves their claims or rights in and to any such fund, payable as issuer's fee under the terms of the Trust Indenture described in the Complaint." Lastly, the order recited that the Bank should recover costs and reasonable attorney's fees, to be assessed against the fund paid into court.

{11} On June 10, 2002, the Authority and Region III filed their answer. The Authority and Region III denied the validity of Garcia's claim to the issuer's fee, but otherwise largely admitted the allegations of the Bank's Complaint. The Authority and Region III admitted that the Bank was entitled to a reasonable attorney's fee. The Authority and Region III asserted a cross-claim against VHAH and Garcia. The Authority and Region III alleged that in 1997 Garcia had been employed by the Authority as its executive director, in which capacity she had served for approximately one year; that during Garcia's tenure, the Authority experienced financial difficulties; that a dispute arose between Garcia and the Board of Commissioners of the Authority concerning the payment of compensation to Garcia; that the amount in dispute between Garcia and the Authority was less than $50,000; that the value of the issuer's fee over the life of the bonds was approximately $600,000; that Garcia breached her fiduciary duties to the Authority "by wrongfully and fraudulently executing documents which had the effect of transferring the [issuer's fee] to Defendant Garcia personally"; that the actions of VHAH which effected the transfer of the issuer's fee were ultra vires, unlawful and in violation of the New Mexico Regional Housing Law, and defrauded the Authority of public funds to which it was entitled; and that VHAH and Garcia had engaged in a civil and criminal conspiracy to deprive the Authority of a significant source of revenue. The Authority and Region III asserted claims for breach of fiduciary duty and tortious interference with contractual relationship against both VHAH and Garcia, and for unjust enrichment against Garcia.

{12} On July 15, 2002, VHAH and Garcia filed an "Answer and Counterclaim" in response to the Bank's Complaint. In their answer, VHAH and Garcia admitted that the Bank was the successor trustee under the 1997 trust indenture; that Garcia had been receiving the issuer's fee; that the Bank was subject to conflicting demands from the Authority, Region III, and Garcia. VHAH and Garcia denied that the Bank had filed its Complaint to avoid multiple lawsuits and double liability. They asserted that the Bank's Complaint failed to state a claim for relief in interpleader or otherwise and that the Bank should be denied relief because of its breach of fiduciary duty in failing to affirmatively defend Garcia's interest in receipt of the issuer's fee and because of the Bank's unclean hands. VHAH and Garcia counterclaimed against the Bank for breach of fiduciary duty and for a civil conspiracy among

the Bank, the Authority, and Region III to breach fiduciary duties the Bank owed to VHAH and Garcia.[1]

{13} On January 13, 2003, the Bank filed a motion for summary judgment. The Bank's motion sought a judgment releasing the Bank from all liability with respect to the interpleaded funds and dismissing VHAH and Garcia's counterclaim. The Bank supported its motion with the affidavit of Linda Mendillo, who identified herself as an employee of the Bank "responsible for administering the Indentures." Attached to Mendillo's affidavit were photocopies of the "Assignment," "Acceptance of Assignment," "Shareholder Consent," "Agreement of Directors in Lieu of Special Meeting," and the March 14, 2002, correspondence between the Bank and counsel for Garcia. The Bank set out, as undisputed material facts, its status as successor trustee; the execution of an original and supplemental indenture in connection with the sale of revenue bonds to finance a low-income housing project; the Authority's creation of VHAH; the Bank's responsibility under the indentures to distribute the issuer's fee to VHAH; the Bank's payment of the issuer's fee to VHAH c/o Garcia until February 2002; the Bank's receipt of the Authority's February 27, 2002, letter requesting that the Bank cease all distributions of the issuer's fee to VHAH or Garcia; and the Bank's subsequent receipt of correspondence from counsel for VHAH and Garcia demanding that the Bank continue to distribute the issuer's fee to Garcia and threatening litigation if the Bank ceased payments. The Bank also summarized the procedural history of the case in the district court.

{14} On January 31, 2003, VHAH and Garcia filed a response to the Bank's motion for summary judgment. The main thrust of the response was an attack on the sufficiency of Mendillo's affidavit. The only fact in the Bank's statement of material facts that VHAH and Garcia specifically controverted was the Bank's assertion that the indentures required the Bank to distribute the issuer's fee to VHAH as the issuer of the revenue bonds. VHAH and Garcia included in their response a "Statement of Disputed Material Facts." VHAH and Garcia asserted the following facts as disputed: that the Bank acted as a trustee with respect to payments received pursuant to the indentures; that the Bank was under a fiduciary duty to distribute the issuer's fee to VHAH; that Garcia had been employed by VHAH as its president; that VHAH had not paid Garcia the compensation she was due; and that VHAH irrevocably assigned the issuer's fee to Garcia in satisfaction of any claims Garcia might have for unpaid wages. VHAH and Garcia also asserted as a "fact" that the Bank was "liable to Garcia for its failure to pay her the [i]ssuer's [f]ees without interruption." VHAH and Garcia attached Garcia's affidavit to their response. In her affidavit, Garcia asserted that she was hired by the Authority's Board or Directors in August 1995; that she rendered valuable service to the Authority, including assisting in the incorporation of VHAH; that she was hired as the President of VHAH; and that the issuer's fee was validly assigned to her in lieu of unpaid compensation owed her by the Authority and VHAH. In her affidavit, Garcia authenticated various documents, including the "Agreement of Directors in Lieu of Special Meeting," the "Assignment," the "Acceptance of Assignment," and the "Shareholder Consent." Photocopies of these documents were attached to her affidavit.

{15} On March 13, 2003, the district court, the District Judge Robert Scott presiding, heard oral argument on the Bank's motion for summary judgment. No evidence other than the affidavits and documents attached to the parties' papers were received into evidence during the hearing. At the close of the hearing the district court notified the parties that it would take the matter under advisement. On March 13, 2003, the district court issued a letter decision grant-

---

1. VHAH and Garcia also filed an answer to the Authority and Region III's cross-claim, a cross-claim against the Authority and Region III, and a third-party claim against individual officers and directors of the Authority. Familiarity with the contents of these pleadings and the responsive pleading filed by the Authority, Region III and the individual third-party defendants is not essential to understanding the issues in this appeal.

ing the Bank's motion for summary judgment. The district court directed counsel for the Bank to prepare a form of order reflecting the court's rulings.

{16} On March 24, 2003, the Bank requested a presentment hearing. Subsequently, the case was reassigned to District Judge Geraldine Rivera. On April 4, 2003, Judge Rivera set a presentment hearing for April 24, 2003. On April 21, 2003, Garcia and VHAH filed a "Motion for Stay of Presentment." In their motion, Garcia and VHAH argued that Judge Scott's rulings in his letter of March 13, 2003, were "contrary to law." Garcia and VHAH requested that the district court vacate the April 24, 2003, presentment hearing "until such time as Judge Rivera has had the opportunity to consider the merits of the motion for summary judgment, form an independent opinion as to the advisability of entering summary judgment for [the Bank], and issue her own ruling on the motion."

{17} On April 24, 2003, the district court heard the Bank's motion for presentment, and Garcia and VHAH's motion for stay of presentment. Garcia and VHAH argued that the Bank had breached a fiduciary duty to Garcia by withholding payment of the issuer's fee in the absence of a court order. Judge Rivera responded that "I am assuming that you argued all this to Judge Scott, and that Judge Scott considered the matter after hearing the evidence and then came up with his letter decision .... So I'm not going to rehear what Judge Scott has already done." Judge Rivera then signed the summary judgment prepared by counsel for the Bank. Consistent with Judge Scott's rulings, the summary judgment signed by Judge Rivera: (1) released the Bank from all liability with respect to the interpleaded funds; (2) dismissed VHAH and Garcia's counterclaim; (3) denied the Bank's request for attorney's fees; and (4) directed the Bank to submit a cost bill. The summary judgment was filed with the district court immediately after the hearing.

{18} On May 8, 2003, Garcia and VHAH filed a motion for reconsideration. The motion for reconsideration largely repeated the arguments set out in Garcia and VHAH's motion to stay presentment. On May 13, 2003, the Bank filed a response arguing that the motion for reconsideration was untimely and that the Bank had not breached a fiduciary duty by filing the interpleader action. On May 16, 2003, Garcia and VHAH filed a reply. They pointed out that if intermediate Saturdays and Sundays were excluded as required by Rule 1–006(A) NMRA, their motion for reconsideration was filed within ten days of the entry as required by Rule 1–059(E) NMRA. Garcia and VHAH also argued that, because Judge Rivera had not heard the case, she was required to independently consider the merits of Judge Scott's rulings. Judge Rivera did not rule on Garcia and VHAH's motion for reconsideration, and therefore it was deemed denied by operation of law. NMSA 1978, § 39–1–1 (1897).

{19} Garcia and VHAH appeal from the summary judgment. The Bank cross-appeals from the denial of its request for attorney's fees.

**DISCUSSION**

{20} Interpleader is governed by Rule 1–022 NMRA. A leading authority, discussing interpleader under federal law, describes interpleader as

a procedural device used to resolve conflicting claims to money or property. It enables a person or entity in possession of a tangible res or fund of money (the "stakeholder") to join in a single suit two or more "claimants" asserting mutually exclusive claims to that stake.

4 James Wm. Moore, *Moore's Federal Practice* § 22.02[1] (3d ed.2005) (hereafter *Moore's Federal Practice* ).

Interpleader litigation ... usually proceeds in two "stages." In the "first stage," the court determines whether interpleader is appropriate on the facts of the case. If so, in the "second stage," the court adjudicates the adverse claims and distributes the stake.

*Moore's Federal Practice,* § 22.03[1][a].

{21} To justify interpleader, the stakeholder must demonstrate that it "is or may be exposed to double or multiple liability." Rule 1–022(A). "[I]t is not difficult for the stakeholder to meet the requirement of a reasonable or good faith fear of multiple

litigation, and courts appear to require merely that the stakeholder's concern in this regard be more than conjectural." *Moore's Federal Practice*, § 22.03[1][c]. According to another authority:

> The right to interpleader depends upon whether the stakeholder has a good faith fear of adverse claims regardless of [the] merits of those claims or even whether the stakeholder himself believes them to be meritorious. Manifestly frivolous claims will not support an interpleader, but the fact that one of the claims is tenuous does not justify denying interpleader, so long as [the] claim is not so utterly baseless that the stakeholder's assertion of multiple claims is not made in good faith[.] Indeed, the discretion which a court has in passing on an application for interpleader is in ascertaining whether the dispute of fact upon which the right to interplead turns is real and substantial or only feigned and colorable; if the dispute is real and substantial, the court has no power to dismiss the interpleader petition.

45 Am.Jur.2d *Interpleader* § 10 (1999) (footnotes omitted).

> There is no set procedure for conducting the first stage of interpleader. The issues typically are formulated by motion. In some cases courts have determined whether interpleader should lie as part of a summary-judgment motion or have treated their inquiry into the matter as if it had been presented on a formal motion for summary judgment.

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1714, at 626 (3d ed.2001) (footnote omitted). The second stage of interpleader involves the adjudication of the respective rights of the claimants to the stake and proceeds like any other civil action. *Id.* at 628. Where appropriate, the second stage may be adjudicated on a motion for summary judgment. *Id.* at 629. The second stage may be employed to adjudicate counterclaims against the shareholder asserting that the stakeholder is independently liable to one of the claimants. *Id.* at 630; *Johnston v. Sunwest Bank*, 116 N.M. 422, 426, 863 P.2d 1043, 1047 (1993).

{22} In the present case, the district court was confronted with the cross-claims of the Authority and Region III on the one hand, and VHAH and Garcia on the other, each asserting a mutually-exclusive claim to the issuer's fee. These cross-claims are a classic example of adverse claims justifying interpleader:

> Interpleader is proper only if claims against the stake are adverse to each other and adverse to the stake itself. *Clearly, claims are adverse to each other if each claimant asserts sole rights to the fund.*

*Moore's Federal Practice*, § 22.03[1][d] (emphasis added); *see also Restatement (Second) of Contracts* § 339 cmt. e (1981) (recognizing interpleader as appropriate where obligee is on notice that the assignment of its obligation may be voidable). In the present case, the cross-complaints by themselves were sufficient to establish a prima facie case entitling the Bank to interpleader.

{23} Citing *Mayfield Smithson Enterprises v. Com–Quip, Inc.*, 120 N.M. 9, 896 P.2d 1156 (1995), VHAH and Garcia argue that even if the Bank was confronted with mutually exclusive, adverse claims to the issuer's fee, the Bank, as an element of its prima facie case of entitlement to summary judgment, was required to negate its affirmative equitable defense of unclean hands. VHAH and Garcia argue that the Bank's hands were unclean because the Bank withheld payment of the issuer's fee and brought this interpleader action in response to the Authority and Region III's claim to the issuer's fee. According to VHAH and Garcia, instead of bringing this interpleader action, the Bank should have continued to pay the issuer's fee to VHAH c/o Garcia and should have aligned itself with VHAH and Garcia in affirmatively resisting the Authority and Region III's claim to the issuer's fee.

{24} VHAH and Garcia have not cited a single case in which a trustee was held to have breached a fiduciary duty to a beneficiary by the mere act of bringing an interpleader action to resolve conflicting claims of entitlement to trust benefits, nor have they cited a single case holding that a trustee has an obligation to take sides in a dispute between

competing parties, each claiming to be the true beneficiary of the trust. Although there do not appear to be New Mexico cases on point, the Bank has referred us to cases from other jurisdictions in which trustees have resorted to interpleader without any suggestion by the court that such action by a trustee is in any way improper. *E.g., Home for Incurables of Baltimore City v. Univ. of Md. Med. Sys. Corp.*, 369 Md. 67, 797 A.2d 746 (2002). The Bank has also called our attention to authorities recognizing that a trustee has a duty to remain neutral in the face of competing claims to trust benefits. *E.g., In re Trust of Duke*, 305 N.J.Super. 408, 702 A.2d 1008, 1023–24 (Ch. Div.1995).

■ {25} As previously noted, the Bank set out, as undisputed material facts, its status as successor trustee; the execution of an original and supplemental indentures in connection with the sale of revenue bonds to finance a low-income housing project; the Authority's creation of VHAH; the Bank's responsibility under the indentures to distribute the issuer's fee to VHAH; the Bank's payment of the issuer's fee to VHAH c/o Garcia until February 2002; the Bank's receipt of the Authority's February 27, 2002, letter requesting that the Bank cease all distributions of the issuer's fee to VHAH or Garcia; and, the Bank's subsequent receipt of correspondence from counsel for VHAH and Garcia demanding that the Bank continue to distribute the issuer's fee to Garcia and threatening litigation if the Bank ceased payments. These facts were not "specifically controverted" by VHAH and Garcia's response as required by Rule 1–056(D) NMRA, and therefore were deemed admitted. These admissions were sufficient to make out a prima facie case that the Bank acted lawfully by withholding payment of the issuer's fee and filing an interpleader action in the face of apparently non-frivolous, adverse claims to the issuer's fee. *Comtrade, Inc. v. First Nat'l Bank*, 146 Ill.App.3d 1069, 100 Ill.Dec. 549, 497 N.E.2d 527, 529 (1986) (observing that "when there are conflicting claims to the deposited funds, a trustee is not required to make a determination as to the rights of the prospective claimants but should file an interpleader action"). The burden of production therefore shifted to VHAH and Garcia to respond to the Bank's prima facie showing of entitlement to summary judgment on the Bank's Complaint for interpleader by demonstrating the existence of a genuine issue of material fact as to the impropriety of the Bank's actions. *See id.* (affirming grant of summary judgment to former stakeholder; rejecting claimant's assertion that the record established a genuine issue of fact as to stakeholder's improper motivation in bringing interpleader).

■ {26} In reviewing the record, we view the evidence tendered by VHAH and Garcia in the light most favorable to support a trial on the merits. *Blauwkamp v. Univ. of N.M. Hosp.*, 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct.App.1992). We conclude that VHAH and Garcia failed to demonstrate a genuine issue of material fact as to the impropriety of the Bank's conduct. We are persuaded that it is proper for a trustee faced with competing claims to invoke the remedy of interpleader as a neutral stakeholder, and this is so even though the trustee's resort to interpleader interrupts payment of trust benefits during the pendency of the interpleader action.

{27} We recognize the possibility of scenarios in which a stakeholder and one or more claimants have unlawfully colluded to bring an interpleader. Here, however, any such theory is unsubstantiated and based entirely on speculation. VHAH and Garcia failed to come forward with any evidence suggesting that the Bank acted with an illegitimate motive. Because VHAH and Garcia failed to demonstrate a genuine issue of material fact as to the reasonableness of the Bank's apprehension of multiple liability or the propriety of the Bank's resort to interpleader, the district court properly granted summary judgment to the Bank on its Complaint for Interpleader.

{28} Like their affirmative defense of unclean hands, VHAH and Garcia's counterclaim is based on the theory that the Bank breached its fiduciary duties when it withheld payment of the issuer's fee and filed an interpleader action in which it took the position of a neutral stakeholder. Our analysis of VHAH and Garcia's counterclaim parallels

our analysis of their affirmative defense of unclean hands. The facts set out in the Bank's motion for summary judgment that were not specifically controverted by VHAH and Garcia were sufficient to make out a prima facie case that the Bank acted lawfully by withholding payment of the issuer's fee and promptly filing an interpleader action in the face of competing claims to the issuer's fee. *Comtrade, Inc.*, 100 Ill.Dec. 549, 497 N.E.2d at 529. The burden of production then shifted to VHAH and Garcia, who were required to demonstrate a genuine issue of material fact as to the lawfulness of the Bank's conduct. As we noted in our discussion of the issue of unclean hands, VHAH and Garcia failed to demonstrate a genuine issue of material fact as to the lawfulness of the Bank's conduct.

{29} Turning to VHAH and Garcia's allegations of conspiracy to breach a fiduciary duty, we note that "[u]nlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability ... [a] civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own." *Ettenson v. Burke*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440. Because summary judgment was proper as to VHAH and Garcia's counterclaim for breach of fiduciary duty, their counterclaim for conspiracy to breach a fiduciary duty necessarily fails for want of an independent basis for liability.

{30} Our analysis renders moot VHAH and Garcia's attack on the sufficiency of the Mendillo affidavit attached to the Bank's "Memorandum in Support of its Motion for Summary Judgment." As we have explained above, the facts deemed admitted pursuant to Rule 1–056(D) were sufficient to establish a prima facie case of entitlement to summary judgment.

{31} Our appellate review also renders moot VHAH and Garcia's argument that Judge Rivera erred by failing to conduct an independent review of the record prior to entering summary judgment. Appellate review of a grant of summary judgment is de novo. *Maralex Res., Inc. v. Gilbreath*, 2003–NMSC–023, ¶ 8, 134 N.M. 308, 76 P.3d 626. In affirming the district court, we have afforded VHAH and Garcia an independent review of the record and have independently determined that the record establishes that "there is no genuine issue as to any material fact and that the [Bank] is entitled to a judgment as a matter of law." *See* Rule 1–056(C).

{32} As to the Bank's cross-appeal, we decline to address the merits of the claim at this time. In the event that the Authority and Region III prevail on their cross-claim and establish their entitlement to the stake, the issue of the Bank's entitlement to attorney's fees may be rendered moot since, as noted above, the Authority and Region III have formally admitted that the Bank is entitled to recover a reasonable attorney's fee. We remand this issue to the district court pending determination of the ownership of the issuer's fee. On remand, the district court should revisit the issue of attorney's fees, and if requested by the parties, enter findings of fact and conclusions of law explaining the basis for its grant or denial of attorney's fees.

{33} **IT IS SO ORDERED.**

WECHSLER and KENNEDY, JJ., concur.