NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3118
_____

LINDA METCALF; MICHELLE HARTLEY;
FILMWEST PRODUCTIONS, LLC;
SUNSET CAPITAL MANAGEMENT, INC,
d/b/a Spirit Halloween; DO YOU KNOW WHERE YOUR PARENTS ARE, LLC,
Appellants

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC;
LAWRENCE R. BELLMORE, JR.; SOLAR WIND PRODUCTIONS, LLC;
MICHAEL JACOBS; RUBY HANDLER-JACOBS; RIO GRANDE STUDIOS, LLC;
ROBIN BRUBACHER
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 4-11-cv-00127)
District Judge:  Honorable Matthew W. Brann
_____

Argued:  September 9, 2014
_____

Before: RENDELL, GREENAWAY, JR. and BARRY, Circuit Judges

(Opinion Filed: October 9, 2014)
_____

Maxwell S. Kennerly, Esq. (Argued)
The Beasley Firm
1125 Walnut Street
Philadelphia, PA 19107

Counsel for Appellants

William E. Mahoney, Jr., Esq. (Argued)
William T. Mandia, Esq.
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
2005 Market Street
Philadelphia, PA 19103

<u>Counsel for Appellees Merrill Lynch, Pierce, Fenner & Smith, Inc. and Robin Brubacher</u>

_____

OPINION

_____

BARRY, <u>Circuit Judge</u>

Appellants Linda Metcalf, Michelle Hartly, FilmWest Productions, LLC, and Sunwest Capital Management, LLC, and Do You Know Where Your Parents Are?, LLC (together, "FilmWest"), sought to produce a feature length film based on a screenplay written by Metcalf. In April 2009, FilmWest deposited $200,000 into a Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") account controlled by a financing partner, Solar Wind Productions LLC ("Solar Wind," together with its owners Michael Jacobs and Ruby Handler-Jacobs). Solar Wind soon appeared to FilmWest to be a fraud, and FilmWest sought to reclaim its deposit in an action filed in June 2009 in the Second Judicial District Court of New Mexico (the "New Mexico Action").

Trojan Productions ("Trojan"), another apparent victim of Solar Wind, also made a deposit that was commingled with FilmWest's in the same Merrill Lynch account. Trojan, too, sought to reclaim its deposit. Shortly thereafter, Merrill Lynch moved to convert the New Mexico Action into an interpleader and, as the stakeholder, to deposit

the account proceeds into court. It did so after its motion was granted in November 2009, leaving Trojan and FilmWest to fight among themselves on the proper allocation of the remaining funds, which had been significantly depleted.

FilmWest had, however, fairly quickly come to believe that Merrill Lynch was not merely an innocent stakeholder serving as custodian over the deposited funds, but a culpable party itself. That belief was based on the actions of two Merrill Lynch employees, Robin Brubacher and Lawrence Bellmore, in allegedly facilitating Solar Wind deals and mishandling the deposits. On August 17, 2009, FilmWest filed the instant action in the Eastern District of Pennsylvania (the "Pennsylvania Action") against Solar Wind, Merrill Lynch, Brubacher, and Bellmore, alleging violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), common law fraud, conversion, and related claims. Thereafter, and for almost two years, FilmWest was litigating its claim vis-à-vis Trojan in New Mexico to the funds remaining in the Merrill Lynch account, and its claim in Pennsylvania for damages as a result of a fraud that cost it both a portion of its $200,000 deposit and the losses that emanated from being deprived of the ability to release a successful film.

On June 2, 2011, the New Mexico action was formally dismissed, and on August 1, 2012, Merrill Lynch and Brubacher (together "ML") moved for summary judgment in the Pennsylvania Action, arguing that the common law principle of res judicata warranted its dismissal. FilmWest argued, in response, that ML had not proved res judicata and that, even if it had, ML acquiesced to proceeding in Pennsylvania, even as it was also

proceeding in New Mexico, without objecting to claim-splitting in a timely manner. On October 5, 2012, the District Court granted ML's motion.

The primary questions on appeal are whether, when the New Mexico Action was terminated, res judicata would have barred the Pennsylvania Action and, if so, whether ML had waived its res judicata defense by having acquiesced to "claim-splitting" by litigating, for as long as it did, some claims arising out of the Solar Wind transaction in New Mexico, and others in Pennsylvania. We conclude that what otherwise would have been a successful defense on the ground of res judicata was waived by ML. We, therefore, will vacate the order of October 5, 2012, and remand for further proceedings.[1] We have jurisdiction under 28 U.S.C. § 1291, and exercise plenary review of an order granting summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). "A court may grant summary judgment only when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (internal quotation marks omitted).

## I. Analysis

The procedural history and factual details of what is before us are not seriously disputed, and the parties, for whom we primarily write, are familiar with both. We need not, therefore, reprise that procedural and factual background beyond what we have just

---

[1] FilmWest was eager to appeal the October 5, 2012 order but a claim against Bellmore remained open. Ultimately, FilmWest moved for summary judgment against itself and in favor of Bellmore, and, on July 1, 2013, that motion was granted. Bellmore has not appeared in this action, and FilmWest, not surprisingly, does not press its appeal as to him.

set forth, and will move directly to consider ML's defense of res judicata, and whether that defense, if it would otherwise apply, has been waived.

A preliminary observation is in order. At the behest of the parties, the District Court primarily applied law, as developed by the federal courts, governing the preclusive effect of *federal* court and *federal* agency judgments (it also relied on cases applying Pennsylvania's law of preclusion). However, under the Full Faith and Credit Act, 28 U.S.C. § 1738, all "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of" the state from which they emerged. "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chem. Const. Corp., 456 U.S. 461, 466 (1982). Thus, "[t]o determine the effect of a [New Mexico] court judgment, we are required to apply [New Mexico's] claim- and issue-preclusion law." R & J Holding Co. v. Redevelopment Auth. of Montgomery, 670 F.3d 420, 426 (3d Cir. 2011).

Under New Mexico's law of preclusion, a final judgment on the merits will bar a subsequent lawsuit if the following elements are met: "'1) the parties must be the same or in privity; 2) the subject matter must be identical; 3) the capacity or character of persons for or against whom the claim is made must be the same; and 4) the same cause of action must be involved in both suits.'" DeFlon v. Sawyers, 139 N.M. 637, 640 (2006), quoting

5

Myers v. Olson, 100 N.M. 745, 747 (1984).  See also Strickland v. City of Albuquerque, 130 F.3d 1408, 1411 (10th Cir. 1997) (applying New Mexico law).[2]

FilmWest argued to the District Court that the order dismissing the New Mexico Action was not on the merits; that the parties in the two actions were neither identical nor in privity;[3] and that the interpleader in New Mexico was a different cause of action from the Pennsylvania Action.  Its unsuccessful arguments on the first two points have not been reraised on appeal.  Our focus, then, is exclusively on whether the New Mexico and Pennsylvania Actions involved "different" causes of action.  They did not.

Interpleaders are by their nature different from tort suits.  Interpleaders are actions in equity and not law, as they seek the injunctive relief of releasing a disputed *res*, and not damages for wrongdoing.  The stakeholder in an interpleader—Merrill Lynch in this case—typically remains a disinterested party completely removed from the tort and contractual claims bearing on the proper allocation of the *res*.  Once the stakeholder deposits the disputed funds into court, it is, practically speaking, out of the litigation entirely, even if it remains a nominal defendant.

It is not clear, however, how those differences bear on the "sameness" or the identity of the two actions *for res judicata purposes*.  Under New Mexico law, the "identity" in question is a "transactional" or event-based identity: a previously-litigated

---

[2] Federal preclusion law imposes the same requirements, with the exception of the requirement that the subject matter in both suits be the same.  See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008).  The subject matter requirement is a unique feature of New Mexico law.

[3] Only FilmWest Productions LLC was a named plaintiff in the New Mexico Action. Also, Brubacher was not a party to the New Mexico Action, but her employer, Merrill Lynch, of course, was.

cause of action is, for the purposes of applying res judicata, "identical" to a present one if the "transaction from which it arose" is the same. Myers v. Olson, 100 N.M. at 747; see also Strickland, 130 F.3d at 1411.[4] Adopting preclusion law from the Second Restatement of Judgments, the Supreme Court of New Mexico has expressly rejected the notion that past proceedings must have litigated the same "legal theories" as a current proceeding in order to bar litigation of the current proceeding. See Myers, 100 N.M. at 747-48 ("[A] cause of action is to be viewed in the context of the transaction from which it arose without regard to the various legal theories that may be available to the parties. A claim is essentially equated with the transaction from which it springs.").

The term "transaction" refers to a "'factual grouping,'" defined by "'relat[ions] in time, space, origin, or motivation.'" Id. at 748 (quoting Restatement (Second) of Judgments § 24); see also Strickland, 130 F.3d at 1411. To determine whether two causes of action arise out of the same transaction, courts must be "'pragmatic[],'" and consider whether the two factual groupings underlying each lawsuit "'form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Myers, 100 N.M. at 748 (quoting Restatement (Second) of Judgments § 24).

The upshot of applying a transactional approach to determining the identity of two causes of action is that a judgment can have preclusive effect in a subsequent action even

---

[4] The federal law of preclusion also employs a transactional approach to res judicata, as the District Court properly found. See Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp., 688 F.2d 166, 171 (3d Cir. 1982) (en banc) ("Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims. . . .").

7

if the issues raised in the subsequent action were not *actually* previously litigated. Claims that *could* have been raised in the first action are barred, so long as the first action arose out of the same transaction. See Strickland, 130 F.3d at 1412 ("The fact that plaintiff's federal claims attempt to vindicate interests or obtain remedies other than those pursued or made available under [a state procedure] does not make the prior action . . . different. . . ."). "'[T]he law of res judicata now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so.'" Id. at 1411 (quoting Restatement (Second) of Judgments § 24 cmt. a).

In summary, under New Mexico law, a judgment on the merits of a first action will preclude a second action if the second action (1) arises out of the same underlying events, and (2) the claims raised in the second action could have been brought in the first one.

The New Mexico Action and the Pennsylvania Action plainly arose from the same "factual grouping" or transaction: the attempt to finance the production of Metcalf's film through the Solar Wind Film Fund. The pleadings in both cases demonstrate this fully: both cases turned on Solar Wind's false promises, Merrill Lynch's mishandling of the deposit, and the representations of its employees Brubacher and Bellmore. It is no surprise, then, that the District Court concluded that FilmWest's "claims in this case do arise from the same transaction or occurrence that gave rise to the claims in the New Mexico [A]ction." (A29.)

FilmWest insists that that finding was in error, arguing that "[t]he sole claim" in New Mexico "was an interpleader in equity," while "the sole suit" in which FilmWest

8

"asserted any causes of action for damages against Merrill Lynch is the case at bar." (Appellants' Br. at 18) (emphasis omitted). True as that statement may be, it does not address the type of similarity at issue for the purpose of determining res judicata. It does not matter that the claims involved in the New Mexico Action invoked a different body of law and sought different relief, because res judicata as the New Mexico courts would apply it depends on the factual overlap giving rise to the two suits, and not on the "various legal theories" advanced based on those facts. Myers, 100 N.M. at 748.

While FilmWest attempts to cast the New Mexico Action as transactionally distinct from the Pennsylvania Action, that attempt collapses into the first, unavailing, argument that the actions are different because they involve different legal claims. FilmWest asserts that it did not "[c]omplain" of any act by Merrill Lynch in the New Mexico Action, and that the "[s]ole relevant fact as against Merrill Lynch" in the New Mexico Action was that Merrill Lynch was, in fact, the stakeholder of the Film Fund. (Appellants' Br. at 24-25.) But in its answer to Merrill Lynch's interpleader counterclaim in New Mexico, FilmWest *did* mention that Merrill Lynch mishandled its deposit and lied about the deposit's status. It simply decided not to seek damages against Merrill Lynch in New Mexico for those acts (unlike Trojan, which did assert affirmative claims of relief against Merrill Lynch in New Mexico). Instead, FilmWest assembled its fairly loose allegations about Merrill Lynch's misconduct, and, adding some detail, crafted more cohesive claims of fraud in Pennsylvania. That decision in no way altered the "factual grouping" underlying the lawsuits: both concerned the same $200,000 deposit handled by the same bank and made pursuant to the same Film Fund deal.

9

FilmWest argues that even if both actions arose out of the same transaction, it could not possibly have brought its fraud claims against ML in New Mexico because the "jurisdiction [of an interpleader] is limited to the amount actually deposited by the stakeholder." (Appellants' Br. at 34) (emphasis omitted).

To be sure, "[c]laims are not precluded . . . where a plaintiff could not seek a certain relief or rely on a certain theory in the first action due to limitations on the subject matter jurisdiction of the first tribunal." State ex rel. Martinez v. Kerr-McGee Corp., 120 N.M. 118, 122 (1995) (citing Restatement (Second) of Judgments § 26(1)(c)). But nothing prohibited the New Mexico court presiding over the interpleader from hearing and determining tort claims against Merrill Lynch or its agents. Indeed, the three New Mexico cases cited to us by FilmWest as being on point plainly state that a defendant may file claims against the stakeholder in an interpleader action—and Trojan did—even if those claims seek damages in addition to the defendant's entitlement to the *res* in the stakeholder's custody. See Johnston v. Sunwest Bank of Grant Cnty., 116 N.M. 422, 426 (1993); Bank of New York v. Reg'l Hous. Auth. for Region Three, 138 N.M. 389, 395 (N.M. Ct. App. 2005); Traveler's Ins. Co. v. Montoya, 90 N.M. 556 (N.M. Ct. App. 1977). There is, therefore, significant authority under New Mexico law that permits claimants to file suit against the stakeholder in an interpleader action—and some authority, via Montoya, for the position that a claimant is *required* to bring such claims.[5]

---

[5] FilmWest also points us to Gaines v. Sunray Oil, 539 F.2d 1136 (8th Cir. 1976), a case that (1) does not apply New Mexico law, (2) is inapposite, and (3) has been held to be inapposite by its own circuit in Wayzata Bank & Trust v. A&B Farms, 855 F.2d 590 (8th

10

Thus, under New Mexico's law of preclusion, res judicata would bar the

Pennsylvania action unless ML waived that defense by acquiescing to simultaneously

proceeding with the two actions. While, to be sure, res judicata is a powerful defense, it

is not without its limits:

> [T]he general rule . . . does not apply to extinguish the claim, and part or all
> of the claim subsists as a possible basis for a second action by the plaintiff
> against the defendant [where] . . . [t]he parties have agreed in terms or in
> effect that the plaintiff may split his claim, or the defendant has acquiesced
> therein[.]
>
> . . . .
>
> Where the plaintiff is simultaneously maintaining separate actions based
> upon parts of the same claim, and in neither action does the defendant make
> the objection that another action is pending based on the same claim,
> judgment in one of the actions does not preclude the plaintiff from
> proceeding and obtaining judgment in the other action. The failure of the
> defendant to object to the splitting of the plaintiff's claim is effective as an
> acquiescence in the splitting of the claim.

Concerned Residents of Santa Fe N., Inc. v. Santa Fe Estates, Inc., 143 N.M. 811, 818-19

(N.M. Ct. App. 2008) (quoting Restatement (Second) of Judgments §§ 24, 26(1) & 26(1)

cmt. a).

FilmWest invoked the waiver exception before the District Court, citing both

Santa Fe Estates and R & J Holding Co., 670 F.3d at 428, a case from our court that

applied Pennsylvania law but, like Santa Fe Estates, also drew heavily from the

Restatement. The District Court found that

> ML . . . did not acquiesce to Plaintiffs' claim-splitting. When FilmWest
> filed a Motion to Dismiss in the New Mexico action containing mention of

Cir. 1988), and E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330 (3d Cir. 2000), a
wholly inapposite federal bankruptcy case.

11

re-filing the case in Pennsylvania, Merrill Lynch responded that "[t]he Court should resolve the competing claims in this single forum . . . rather than allow FilmWest to further forum shop and engage in duplicative and piecemeal litigation in additional jurisdictions" and FilmWest's Motion to Dismiss was ultimately withdrawn. Instead of moving the entire case to Pennsylvania as was originally planned, Plaintiffs merely filed a second action and pursued both simultaneously, thereby assuming the risk that the conclusion of one of the actions could have preclusive effect on the other. The ML defendants then moved for dismissal based on res judicata within a reasonable time after the dismissal of the New Mexico case.

(A30-31.) (alteration in original) (citation omitted).

We conclude that the courts of New Mexico would not agree. Of those two purported "objections" by ML, the first occurred far too early, and the second far too late. Indeed, the first objection was not an objection to *splitting* anything. As the District Court noted, it was lodged before the Pennsylvania Action was even filed, and in response to FilmWest's motion to *dismiss the New Mexico Action altogether*. At no point in that motion to dismiss did FilmWest raise the prospect of litigating some claims in New Mexico and others in Pennsylvania. It merely sought the effective *transfer* of *all* of its claims from New Mexico to Pennsylvania. That transfer, and not split litigation, is all that ML opposed.[6]

Even if we were to construe ML's first objection as an objection to claim-splitting, its actions from that point until the entry of judgment in the New Mexico Action indicate

---

[6] Because it came before the Pennsylvania Action was filed, ML's response to FilmWest's motion to dismiss plainly was inadequate under New Mexico law. To preserve its res judicata defense, a defendant must object, in at least one of the two actions, "that *another* action is *pending* based on the same claim." Concerned Residents, 143 N.M. at 819 (emphasis added) (quoting Restatement (Second) of Judgments § 26 cmt. a). But when ML filed its response, there was no other action pending based on the same claim; indeed, FilmWest had not even suggested litigating its dispute with ML in two separate forums.

12

something completely different. Once the Pennsylvania Action was filed, ML engaged in considerable litigation activity, for almost two years, without objecting to the parallel actions. During that time, ML had every opportunity to move to dismiss or to enjoin the Pennsylvania Action on the ground that it was duplicative, or seek to transfer it to New Mexico. But ML did no such thing. Before the New Mexico Action was terminated, ML's motions to dismiss raised only arguments opposing the merits of FilmWest's claims. And ML received the only transfer it ever requested, which was from the Eastern District to the Middle District of Pennsylvania—not to New Mexico. Thus, at best, ML initially preserved its res judicata defense, only to waive it after the split claims took shape. See Concerned Residents, 143 N.M. at 822 (although defendant asserted res judicata as a defense in an answer, its subsequent "vigorous participation in both actions without objection for more than a year" constituted acquiescence) (internal quotation marks omitted).

Only after the New Mexico Action ended in June of 2011 did ML clearly object to claim-splitting, but that was by asserting, for the first time, res judicata as a defense to the Pennsylvania Action. That objection plainly arrived too late, as it came at a time after FilmWest could change course. The District Court found it significant that ML asserted res judicata "within a reasonable time after the dismissal of the New Mexico case." (A31.) But that reasoning confuses the nature of the objection—the objection is to claim-splitting—with the nature of an assertion of res judicata, which is quite different. And under New Mexico law, a defendant must object "at the earliest feasible point." Concerned Residents, 143 N.M. at 822 ("If a defendant sees two actions as detrimental to

13

the defendant's interests, it should be incumbent on the defendant to specifically attack the claim-splitting by obtaining court relief at the earliest feasible point."). There is no evidence either that ML ever saw the two actions as detrimental to it in any way, much less that almost two years after the Pennsylvania Action was filed was the "earliest feasible point" to seek court relief. And, again, a defendant's objection to claim-splitting must come while both actions are *pending*. Only then can the doctrine of waiver discourage what one case called the "unsavory tactical maneuver[]" of abandoning an agreed-upon method of resolving legal claims to deprive a plaintiff the opportunity to litigate claims it thought it could press in a separate action. Matter of Super Van Inc., 92 F.3d 366, 371 (5th Cir. 1996). See also Concerned Residents, 143 N.M. at 821 (discussing the importance of providing plaintiffs with "fair notice" of the possibility of claim preclusion).

This certainly appears to be a case in which ML invoked res judicata to upend what appeared to be the understood, though perhaps wasteful, method of resolving a multi-faceted legal dispute. But under New Mexico law, a defendant cannot engage in extensive, split litigation without objection, and still preserve its res judicata defense.

## IV. Conclusion

The order of October 5, 2012 will be vacated, and this matter remanded for further proceedings.

14