IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-073

Filing Date: April 22, 2011

Docket No. 28,436

CARMEN M. ALCANTAR and
ISIDRO R. ALCANTAR,

        Plaintiffs/Judgment Creditors,

and

GILBERT SANCHEZ, Personal
Representative of the ESTATE
OF MIKE SANCHEZ, deceased,

        Intervenor/Third-Party Plaintiff-Appellant,

v.

JOE SANCHEZ, d/b/a GLENWOOD
CUSTOM HOMES,

        Defendant/Judgment Debtor,

and

WELLS FARGO BANK, N.A.,

        Garnishee/Third-Party Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
William F. Lang, District Judge

René Ostrochovsky
Albuquerque, NM

for Appellant Gilbert Sanchez

Moses, Dunn, Farmer & Tuthill, P.C.
Alicia L. Gutierrez

1

Jason M. Wexler
Albuquerque, NM

for Appellee Wells Fargo Bank, N.A.

Aldridge, Grammer, Jeffrey, & Hammer, P.A.
David A. Grammer III
Albuquerque, NM

for Appellees Carmen M. Alcantar and Isidro R. Alcantar

**OPINION**

**KENNEDY, Judge.**

**{1}** This appeal presents issues relating to the garnishment of funds held in a joint bank account. The district court awarded summary judgment in favor of the bank. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I.  STANDARD OF REVIEW

**{2}** Our standard of review is well settled. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "In determining whether a factual dispute exists, courts must resolve all reasonable inferences in favor of the nonmovant and must read the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits." *Limacher v. Spivey*, 2008-NMCA-163, ¶ 8, 145 N.M. 344, 198 P.3d 370. "Ultimately, we review de novo the legal question of whether a party is entitled to summary judgment as a matter of law." *State ex rel. State Eng'r v. Comm'r of Pub. Lands*, 2009-NMCA-004, ¶ 12, 145 N.M. 433, 200 P.3d 86.

## II.  BACKGROUND

**{3}** In March or April 2006, Mike Sanchez (Mike) visited a local branch of Wells Fargo Bank (the Bank) in order to change the status of his accounts. In light of the recent death of his wife, Mike wanted his two sons, Joe and Gilbert, to be able to assist him with the payment of bills and other financial matters. Mike was advised by the Bank to close his existing accounts and open new ones. To that end, a "Consumer Account Application" was filled out, in which Mike was denominated the "Primary Joint Owner" and his sons were denominated "Secondary Joint Owner[s]." Midway through a paragraph at the bottom of the application is an affirmation that the applicant has "received a copy of the applicable account agreement and privacy brochure and agree[s] to be bound by them." Mike signed the application, and the joint accounts that are the subject of this appeal were opened.

2

**{4}** In late October 2006, a writ of garnishment was issued in connection with a civil lawsuit in which Carmen and Isidro Alcantar (the Alcantars) had obtained a judgment against Joe. The writ, which was addressed to the Bank, identified Joe as the judgment debtor and specified that the outstanding balance exceeded $36,000. In its answer, the Bank indicated that it owed Joe $17,474.77. This was the entire amount held in the accounts held jointly by Mike, Joe, and Gilbert. The Bank took immediate possession of all of the funds, such that none of the joint account owners could access them.

**{5}** When Mike received notice of the garnishment, he promptly filed a motion to intervene, asserting that he was in fact the sole owner of all funds in the accounts and contending the garnishment was wrongful. The motion was granted. Mike then filed a permissive complaint in intervention against the Bank, advancing claims of conversion, breach of fiduciary duty, negligence, and negligence per se. In response, the Bank filed a counterclaim and cross-claim for interpleader, indicating that while it had no claim of its own upon the funds in question, both the Alcantars and Mike had made conflicting claims. Over Mike's objections, the Bank's counterclaim and cross-claim for interpleader were granted.

**{6}** Mike filed a motion for partial summary judgment, asserting that his sole ownership of the funds was undisputed. This motion was denied. The Bank then filed its own motion for summary judgment. It contended that its seizure of the funds was in accordance with the terms of the consumer account agreement as well as the law pertaining to garnishment, such that the claims for conversion and negligence were not viable. The Bank further contended there was no basis for the existence of a fiduciary duty. The district court found in the Bank's favor and granted summary judgment with respect to all of Mike's claims. Mike was reimbursed by the Bank. This appeal followed.

## III. DISCUSSION

**{7}** A large number of issues have been raised on appeal. We will address related matters together under unified headings.

### A. Denial of Mike's Motion for Partial Summary Judgment

**{8}** First, Mike contends the district court erred in denying his motion for partial summary judgment with respect to the ownership of the funds in the garnished accounts.

**{9}** The denial of a motion for summary judgment is not generally reviewable on appeal. *Green v. Gen. Accident Ins. Co. of Am.*, 106 N.M. 523, 527, 746 P.2d 152, 156 (1987) (holding that "denial of a motion for summary judgment is not reviewable after final judgment on the merits"); *but see, e.g., McAlpine v. Zangara Dodge, Inc.*, 2008-NMCA-064, ¶¶ 29-30, 144 N.M. 90, 183 P.3d 975 (reviewing the denial of a motion for summary

3

judgment). However, to the extent that the argument might be characterized as an attack on the award of summary judgment to the Bank, we briefly address the merits.

**{10}** In support of his motion, Mike relied on an affidavit and an alleged admission. In the affidavit, Joe stated that he had never deposited or withdrawn any money from the garnished accounts, he claimed no ownership in the accounts, and his name had merely been added in order to assist Mike with Mike's own financial affairs. The "admission" was extracted from an e-mail exchange between counsel for the Bank and counsel for Mike, in which document production was the subject of discussion. Counsel for the Bank suggested that documents reflecting recent deposits into the account, "which would support your position that the money did not belong to Joe," should be produced.

**{11}** Mike contends that the foregoing materials "conclusively" established Mike as the sole owner of the funds in the garnished accounts, such that partial summary judgment should have been granted with respect to this central question. We disagree. With respect to the affidavit, we fail to see how Joe's unilateral assertion as to the ownership of the funds could be regarded as conclusive. *Cf. Jemko, Inc. v. Liaghat*, 106 N.M. 50, 52, 738 P.2d 922, 924 (Ct. App. 1987) ("[T]he answer of the garnishee is not conclusive upon the court issuing the garnishment as to the true ownership of the funds sought to be garnished[.]"). Plus, the alleged "admission" extracted from the e-mail message is ambiguous. These documents cannot be said to conclusively resolve the ownership issue, particularly in light of conflicting evidence that the funds were jointly owned by Mike, Joe, and Gilbert as reflected in the account documents. Because there was a genuine issue of material fact with respect to the ownership of the funds, the district court properly denied Mike's motion for partial summary judgment.

**B.      Award of Summary Judgment to the Bank**

**{12}** As an initial matter, the Bank suggests Mike's appeal from the award of summary judgment should be deemed moot because the garnished funds were ultimately returned to him. However, the return of the funds was not the only relief sought in the complaint. Mike also requested compensatory damages, pre- and post-judgment interest, punitive damages, and attorney fees and costs. Insofar as these matters were not addressed by the return of the funds, the various issues relating to the award of summary judgment are not moot. *See, e.g., Cromer v. J.W. Jones Constr. Co.*, 79 N.M. 179, 181, 441 P.2d 219, 221 (Ct. App. 1968) (concluding that an appeal from an order dismissing a complaint was not rendered moot by payment where the claimant's entitlement to additional recovery remained unresolved), *overruled on other grounds by Schiller v. Sw. Air Rangers, Inc.*, 87 N.M. 476, 478, 535 P.2d 1327, 1329 (1975).

**{13}** A variety of theories were advanced below regarding the Bank's motion for summary judgment. The district court did not specifically identify the basis for its ruling. We therefore address all pertinent arguments, organizing our analysis around the claims advanced in the complaint.

4

## 1.    Conversion

**{14}**    The first claim set forth in the complaint is for conversion.  "Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Sec. Pac. Fin. Servs. v. Signfilled Corp.*, 1998-NMCA-046, ¶ 15, 125 N.M. 38, 956 P.2d 837.

**{15}**    In his complaint, Mike avers that the Bank converted his property when it seized the funds held in his accounts.  The Bank's conduct is alleged to have been unlawful, unauthorized, and/or wrongful, insofar as notice and joinder were not accomplished as required by law, and insofar as all of the funds actually belonged to Mike, rather than the judgment debtor identified in the writ.

**{16}**    The Bank successfully argued it was entitled to summary judgment on either of two theories:  (1) the Bank's conduct was in compliance with the writ and in conformity with all applicable laws; and (2) the consumer account agreement associated with Mike's accounts provided complete authorization for the Bank's course of conduct.  For the following reasons, we conclude that neither of these arguments supports the award of summary judgment.

### a.    The Writ and Applicable Law

**{17}**    The writ of garnishment issued by the court was in the general, statutorily specified form.  *See* NMSA 1978, § 35-12-18 (1969) (generally setting forth the form of writs of garnishment issued by the magistrate courts); NMSA 1978, § 35-12-19 (1979) (providing for the issuance of writs of garnishment by the district courts in the same manner specified for the magistrate courts).  It orders the Bank to file an answer, keep any money that is owed to the judgment debtor in sufficient quantity to satisfy the outstanding indebtedness and mail copies of the writ, the application, the answer, and the claim of exemption forms to the judgment debtor within four business days.

**{18}**    Superficially, the Bank's conduct appears to have been in compliance with the terms of the writ.  The difficulty arises, however, when the identity of the judgment debtor is considered.  As the writ clearly specifies, the only judgment debtor was Joe.  Accordingly, only monies owed by Joe were subject to seizure. *Jemko*, 106 N.M. at 52, 738 P.2d at 925 ("A judgment creditor acting under a writ of garnishment, after due notice to interested parties, can only seize the property that belongs to the judgment debtor."); *see* NMSA 1978, § 35-12-3(A), (C) (1969) (providing that "service of a garnishment on the garnishee has the effect of attaching all . . . money . . . *of the defendant* in the garnishee's possession or under his control at the time of service of the garnishment" and that after service, "it is unlawful for the garnishee to pay *to the defendant in the action*" any money attached by the garnishment (emphasis added)).  It is therefore questionable whether the Bank's act of

5

seizing all the funds contained in the accounts jointly held by Mike, Joe, and Gilbert could be said to conform with the writ.

{19} To our knowledge, no authority in New Mexico directly addresses the handling of joint accounts in situations like this. A broad variety of approaches have been taken in other jurisdictions. *See generally* Martha A. Churchill, Annotation, *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor*, 86 A.L.R. 5th 527 (2010).

{20} Where joint bank accounts are the subject of garnishment, statutory provisions and case law provide limited guidance. Ownership of multiple-person accounts is addressed in NMSA 1978, Section 45-6-211(B) (1992), which provides that "[d]uring the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In this context, "net contribution" is defined in pertinent part as "the sum of all deposits to an account made by or for the party, less all payments from the account made to or for the party which have not been paid to or applied to the use of another party." Section 46-6-211(A).

{21} Accordingly, absent clear and convincing evidence of a different intent, the ownership of the funds at issue in this case corresponded with net contributions. Insofar as "[a] judgment creditor acting under a writ of garnishment . . . can only seize the property that belongs to the judgment debtor," *Jemko*, 106 N.M. at 52, 738 P.2d at 925, arguably only Joe's net contributions to the accounts should have been subject to seizure pursuant to the writ of garnishment. *Cf. Johnston v. Sunwest Bank*, 116 N.M. 422, 423, 863 P.2d 1043, 1045 (1993) (agreeing that, by enacting provisions of this nature, the Legislature intended to prevent a holder of an interest in a joint account from defeating the ownership rights of the other joint owners by his or her unilateral acts).

{22} Although the foregoing principles seem relatively simple in the abstract, difficulties arise with respect to their practical application. As the Bank has argued, garnishees may not have sufficient information at their disposal to perform the "net contribution" calculation when served with a writ. Accordingly, we understand the Bank to contend that seizure of the entire amount held in a joint account should be deemed appropriate whenever a writ of garnishment identifies any co-owner of a joint account as a judgment debtor.

{23} Upon careful consideration, we conclude that the approach advocated by the Bank is at odds with the basic propositions articulated above, concerning the ownership interests of joint account holders and judgment creditors' ability to garnish only property belonging to judgment debtors. We therefore reject the Bank's argument that the seizure of all of the funds held in the joint accounts, without any acknowledgment of or concession to the interests of the non-debtor co-owners, was in accordance with law.

{24} We recognize that banking institutions may be placed in a difficult position when presented with a writ of garnishment in a case such as this where a joint account exists and

6

only one of the co-owners is identified as a judgment debtor. *See* Churchill, *supra*, at 559-60 (describing the difficulties presented in such cases). Immediate resort to interpleader, together with payment of all disputed monies into the court registry, may be the most appropriate response. *See supra.* Alternatively, placing a brief hold on the account and promptly engaging in a reasonable investigation might be permissible. *Cf. Landrum v. Sec. Nat'l Bank of Roswell*, 104 N.M. 55, 62, 716 P.2d 246, 253 (Ct. App. 1985) (holding that a bank could place a hold on a depositor's checking account in order to make a reasonable inquiry). However, neither of those approaches was taken in this case. Instead, as previously stated, the Bank acted on the writ by seizing all funds in the joint accounts and sending the standard paperwork to the judgment debtor, disregarding entirely any interests of the other named co-owners.

**{25}** Likewise, the Bank's conduct runs afoul of at least one statutory provision, which applies with respect to adverse claims on deposits:

> Notice to any bank of an adverse claim to a deposit with such bank need not be recognized, *and shall not be deemed effective*, unless and until either the person making the claim supplies indemnity deemed adequate by the bank or the bank is served with process or order issued by a court of competent jurisdiction in an action in which the adverse claimant *and the person or persons nominally entitled to the deposit* are parties[.]

NMSA 1978, § 58-1-7 (1975) (emphasis added). This language suggests that a writ of garnishment is not to be deemed effective absent indemnity provided by the garnishor, service of process, or an order reflecting that all interested parties have been joined.

**{26}** To the extent the Bank deemed the writ to be effective without ensuring that the necessary statutory preconditions were met, Mike contends that the seizure of the funds in the joint accounts may be characterized as unauthorized, unlawful, and wrongful, thereby supplying further support for his conversion claim. By contrast, the Bank characterizes Section 58-1-7 as permissive, allowing it to refuse to honor an adverse claim under the specified circumstances but not requiring it to do so.

**{27}** We reject the Bank's interpretation for two reasons. First, it is at odds with the mandatory nature of the language employed. *See generally State v. Guerra*, 2001-NMCA-031, ¶ 14, 130 N.M. 302, 24 P.3d 334 ("The word 'shall' as used in a statute is generally construed to be mandatory."). Second, it is inconsistent with precedent. *See Landrum*, 104 N.M. at 59-60, 716 P.2d at 250-51 (rejecting an argument that Section 58-1-7 should be deemed to permit banks to recognize adverse claims that fail to comply with the specified procedural requirements). "Section 58-1-7 provides that notice of an adverse claim is not an effective notice unless the claimant complies with the procedure set forth in Section 58-1-7." *Landrum*, 104 N.M. at 60, 716 P.2d at 251. Accordingly, to the extent the Bank deemed the writ to be effective notice of an adverse claim, despite the absence of parties

7

nominally entitled to the deposit, the Bank's conduct was contrary to Section 58-1-7 when Mike's money was taken by the Bank.

{28}    In summary, we conclude that the foregoing authorities provide sufficient support for the claim of conversion to render the award of summary judgment to the Bank improper, and we reverse.

**b.      The Applicable Account Agreement**

{29}    As stated above, the consumer account application that Mike, Joe, and Gilbert signed contained a provision indicating each "received a copy of the applicable account agreement and privacy brochure and agree[d] to be bound by them." In connection with its motion for summary judgment, the Bank relied on portions of a document in excess of thirty-five pages in length, which a paralegal for the Bank identified as the applicable account agreement in effect at the time the accounts in question were opened. This document specifies that account holders "agree" to numerous terms and conditions, among which is a provision allowing the Bank to "accept and act on any legal process that it believes is valid . . . [including] garnishment[.]" Additionally, the document provides that "[t]he Bank may rely solely on its records to determine the form of ownership[.]" Finally, the document indicates that "[i]f there is . . . legal action (such as a third-party garnishment . . . ) affecting any co-owner, the Bank may treat all funds in the Account as belonging to the person against whom the . . . legal action is directed."

{30}    The Bank has argued that its course of conduct in relation to the account and in response to the writ of garnishment was expressly authorized under the foregoing terms, such that there is no basis for the claim of conversion.

{31}    We tend to agree that if the document in question actually governs Mike's contractual relationship with the Bank, the Bank's conduct was authorized. However, in his response to the Bank's motion for summary judgment, Mike filed an affidavit in which he clearly and explicitly denied ever receiving a copy of the applicable "account agreement," or being informed of its terms. This creates a genuine issue of material fact with respect to the applicability of the agreement. *See generally Pope v. The Gap, Inc.*, 1998-NMCA-103, ¶¶ 11, 13, 125 N.M. 376, 961 P.2d 1283 ("For an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract . . . [and, m]utual assent is based on objective evidence, not the private, undisclosed thoughts of the parties.").

{32}    We understand the Bank to contend that there should be no question as to Mike's receipt of the applicable account agreement and its binding effect because the consumer account application contains an affirmation of receipt. Yet, the affirmation is not strictly controlling. Rather, we may look beyond the terms of the consumer account application and consider the circumstances surrounding the bargain. *See generally Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 13, 129 N.M. 698, 12 P.3d 960 ("In abandoning

8

reliance only on the four-corners approach, courts are now allowed to consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover.").

**{33}** Because there is a genuine dispute as to whether the applicable account agreement was incorporated in the parties' contractual relationship, its terms do not supply a basis for the award of summary judgment to the Bank.

**2.        Negligence and Negligence Per Se**

**{34}** We turn next to the claims for negligence and negligence per se. "Negligence as a cause of action requires the proof of the following elements:  duty, breach of that duty by failing to conform to the required standard, proximate cause, and loss or damage." *Payne v. Hall*, 2004-NMCA-113, ¶ 17, 136 N.M. 380, 98 P.3d 1030, *rev'd on other grounds*, 2006-NMSC-029, 139 N.M. 659, 137 P.3d 599.  Negligence per se requires:

> (1) There must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the [L]egislature through the statute sought to prevent.

*McElhannon v. Ford*, 2003-NMCA-091, ¶ 32, 134 N.M. 124, 73 P.3d 827 (alteration omitted) (internal quotation marks and citations omitted).

**{35}** In the complaint, the claims for negligence and negligence per se are premised on much the same conduct and considerations as the claim for conversion.  To summarize, the Bank is alleged to have wrongfully seized the funds in the accounts despite its actual or constructive knowledge of Mike's actual ownership in violation of Section 58-1-7 without providing notice to Mike.

**{36}** The Bank moved for summary judgment with respect to these claims on grounds that (1) no basis for the existence of any statutory duty had been established,  (2) proper notice was given, and (3) its conduct was in compliance with the terms of the writ and the applicable account agreement.

**{37}** We have already rejected the Bank's first and third enumerated arguments in connection with the claim for conversion.  To briefly reiterate, Section 58-1-7 establishes a mandatory statutory procedure with respect to the handling of adverse claims to deposits. As a result, it supplies a basis for the existence of a statutory duty.  Had the Bank only complied with that statute, this case may well have not been needed to vindicate Mike's rights.  With respect to the Bank's conduct, there are genuine issues of material fact concerning compliance with the terms of the writ and the law as it pertains to the

9

garnishment of joint accounts, as well as with the applicability of the account agreement. We therefore reject these arguments as grounds for the award of summary judgment in relation to the claim for negligence per se.

**{38}** The Bank's remaining argument, relating to the question of Mike's entitlement to notice, has greater merit. Our rules concerning notice to third-party, non-debtor co-holders of jointly held accounts when a notice of garnishment is received require nothing of a bank. Rule 1-065.2(F) NMRA provides for mailings to each debtor by the garnishee, but leaves off short of the present situation. When a bank has knowledge of a non-debtor owner of an account subject to garnishment, Section 58-1-7 obligates the bank to act with regard to the garnishment and the sufficiency of the creditor's claim, but not with regard to the non-debtor owners.

**{39}** Mike relies principally on an excerpt from *Jemko*, which provides that "[a] judgment creditor acting under a writ of garnishment, *after due notice to interested parties*, can only seize the property that belongs to the judgment debtor." 106 N.M. at 52, 738 P.2d at 924 (emphasis added). *Jemko*, however, does no more than state that a judgment creditor cannot reach funds owned jointly by the debtor and someone who is not a party to the garnishment proceeding. While *Jemko*'s holding may be furthered and enforced by a bank declining under Section 58-1-7, a garnishment that does not on its face show that the other owners of a bank account sought to be garnished, it does not require that the bank provide notice to the non-debtor depositors. Similarly, *Johnston*, mentioned above, may deny summary judgment to a bank and allow an action for negligence when a bank has violated its own procedures by allowing a new person to be added to an account without any notice to an account holder, even if the complaining party is not an owner by virtue of having made no contribution to the account, but having a contingent survivor's interest. 116 N.M. at 426, 863 P.2d at 1047. However, *Johnston* did not deal with a garnishment, but the removal of the funds by the added third owner of whom the plaintiff might not have been given notice. It did not deal with a claim for funds in a joint account by an outsider through garnishment.

**{40}** A debtor may not make his fellow depositors aware of his status or of proceedings against him that might impact their interests in the joint account. A bank, as garnishee, has the obligation not to honor a garnishment that does not list all owners of an account, but we are hesitant to impose a further duty to notify the non-debtor account owners of the garnishment. Current statutes impose a duty to ensure that incoming claims against accounts are sufficient; that account ownership exists in proportion to account contributions under Section 46-6-211(A) absent contrary intent of the owners does not compel a bank garnishee to provide any greater measure of protection to non-debtor account owners. In the absence of clear legislative or common law rules establishing a duty of notice, we find none and affirm the district court's grant of summary judgment for the Bank as to negligence.

**{41}** *Jemko* and other authorities previously discussed in relation to the garnishment of joint accounts imply that all interested parties are entitled to notice with respect to garnishment, but from the creditor, not the garnishee bank.

10

**{42}** Such a duty to give notice when the bank is aware of non-debtor holders (in this case, owners) whose interests are jeopardized by a garnishment of which the bank becomes aware comes from the primary status as garnishee that the bank occupies. A fellow depositor may not be made aware of the garnishment by the fellow depositor who is a debtor, but the bank possesses the information concerning the claim quite directly. Together with the statutory duty to ensure a garnishment not proceed against innocent depositors if they were not included in or served with the proceedings for garnishment, the bank can properly be viewed as having a responsibility to notify the non-debtor holders of an account that a problem with their account exists by way of a claim against it. To the extent to which these duties are supported by sufficient facts in this case, we hold that the claims for negligence per se and negligence were improperly dismissed, and we reverse the district court.

### 3. Breach of Fiduciary Duty

**{43}** Next, we consider Mike's claim for breach of fiduciary duty. "[A] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." *Moody v. Stribling*, 1999-NMCA-094, ¶ 18, 127 N.M. 630, 985 P.2d 1210 (internal quotation marks and citations omitted). Our assessment of whether a fiduciary duty exists between two parties turns on "whether the relationship between the parties is one of trust and confidence." *Id.* ¶ 17.

**{44}** As the basis for the claim in this case, the complaint specifies that the Bank owed Mike a fiduciary duty "as trustee of [his] deposited funds." The Bank challenged this proposition below, contending as a matter of law that it could not be said to owe any fiduciary duty to Mike.

**{45}** No authority has been cited to suggest that banks universally owe fiduciary duties to their depositors. *See generally In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (observing that if a party cites no authority to support an argument, we may assume no such authority exists). There is a similar lack of authority to support the proposition that banks should be regarded as trustees vis-à-vis their depositors. To the extent Mike advocates the adoption of either of these approaches, we decline to do so.

**{46}** Nor do we find any evidentiary support for the existence of a fiduciary relationship in this case. The only evidence in the record addressing the specifics of the relationship between the parties is the aforementioned account agreement. Nothing therein suggests the Bank was a fiduciary. By all appearances, the parties merely established an arm's-length, commercial relationship. Under such circumstances, a claim for breach of a fiduciary duty cannot stand. *Branch v. Chamisa Dev. Corp.*, 2009-NMCA-131, ¶ 41, 147 N.M. 397, 223 P.3d 942, *cert. denied*, 2009-NMCERT-011, 147 N.M. 463, 225 P.3d 793.

**{47}** In his reply brief to this Court, Mike suggests that his claim for breach of fiduciary duty could properly be based on the Bank's activities as an account advisor, which were

undertaken in response to his request to alter the status of his accounts. But this theory was not advanced below, and we decline to consider its merits.

**{48}** In summary, because Mike failed to establish any basis for the existence of a fiduciary relationship between himself and the Bank, we affirm the district court's award of summary judgment with respect to that claim.

## C. Interpleader

**{49}** Mike argues the district court erred in granting the Bank's counterclaim and cross-claim for interpleader. The Bank contends Mike's challenge to the propriety of the interpleader order should be deemed moot because the funds that were the subject of interpleader have been returned to Mike.

**{50}** We do not generally consider moot issues. *State v. Wilson*, 2005-NMCA-130, ¶ 14, 138 N.M. 551, 123 P.3d 784, *aff'd*, 2006-NMSC-037, 140 N.M. 218, 141 P.3d 1272. "An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief." *State v. Sergio B.*, 2002-NMCA-070, ¶ 9, 132 N.M. 375, 48 P.3d 764.

**{51}** In this case, vacating the interpleader order affords Mike no relief, insofar as the interpleader proceedings have been concluded and the disputed funds have been returned to him. Although Mike contends that the order should be vacated on remand to "dispense with the fiction that the Bank was an innocent bystander," the order supports no such inference. To the contrary, it specifically provides that the interpleader did not absolve the Bank of any liability with respect to Mike's complaint in intervention. As a result, we agree with the Bank that the propriety of the interpleader order is moot. Yet, in the event some form of supplemental relief might otherwise be afforded, we very briefly address Mike's various challenges.

**{52}** Mike attacks the order chiefly on the theory that the Bank abandoned neutrality by litigating against him, rendering interpleader improper. However, the Bank's litigation conduct was not inconsistent with interpleader.

**{53}** "Traditionally, one of the essential requirements in an equitable interpleader action was that the plaintiff seeking interpleader be entirely indifferent to the conflicting claims, asserting no interest in the fund or property deposited." *Fireman's Ins. Co. v. Bustani*, 105 N.M. 760, 761, 737 P.2d 541, 542 (1987). We find no indication that the Bank ever asserted any claim to the funds, which were the subject of the garnishment dispute. Nor did the Bank advance any other claim against Mike or any other party. Rather, it was Mike who advanced claims against the Bank. The Bank's defensive response to Mike's claims does not undermine the propriety of interpleader. *See id.* ("It is no longer a ground for objection that the [party seeking interpleader] avers that he is not liable in whole or in part to any or all of the claimants." (internal quotation marks and citation omitted)).

12

**{54}** Mike further argues that the district court erred because there was no longer any dispute with respect to the disposition of the funds at the time the interpleader order was entered. In support of this proposition, Mike relies on the Alcantars' filing of notice of withdrawal of the writ of garnishment. However, that withdrawal was expressly "conditioned on there being no fees, costs, or damages assessed" against the Alcantars. We find no indication the district court took action upon that conditional notice. To the contrary, the record reflects that the writ was withdrawn only after the parties stipulated to the disbursement of the funds to Mike. We therefore conclude that there was a continuing dispute at the time the order was entered, providing a proper subject for interpleader.

**{55}** Finally, Mike takes issue with supplemental language appearing in the interpleader order. In part, this language indicates that the Bank "is discharged from any liability to any of the parties, except as to the allegations pled by Mike . . . [which] will be decided by the [c]ourt at a later date." Mike contends that this represents an improper attempt to eliminate the basis for any claims that might have been brought by third parties. However, Mike has failed to demonstrate any basis to assert the rights of third parties. *See generally ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 31, 144 N.M. 471, 188 P.3d 1222 (describing the showing that a litigant must make in order to assert the rights of third parties).

**{56}** Mike further contends that the language indicating that his claims and the Bank's request for attorney fees would be decided at a later date was improper because it reflects an expression of intent to deny him a jury trial and because there was no basis for an award of attorney fees to the Bank. It seems reasonably clear, however, that the language in question was merely intended to reflect that there had been no release of liability with respect to Mike's claims and that the merits of the Bank's request for attorney fees would not be immediately addressed. *See generally Albuquerque Nat'l Bank v. Second Jud. Dist. Ct.*, 77 N.M. 603, 609, 426 P.2d 204, 208 (1967) (Wood, J., dissenting) ("Orders, like judgments, must receive a reasonable interpretation. Whenever a judgment is susceptible of two interpretations, one of which is in the power of the court and the other would exceed it, the first must be preferred."). As such, we perceive no impropriety. We therefore reject Mike's challenges to the interpleader order.

## D.    Miscellaneous Matters

**{57}** Finally, we briefly address an assortment of residual issues and arguments advanced in the briefs.

## 1.    Violation of Federal Laws

**{58}** In several places throughout his briefs to this Court, Mike contends that the Bank's course of conduct violated federal laws.

13

**{59}** "To preserve an issue for appeal, a party must clearly raise the issue in the lower court by invoking a ruling from the court on the question." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 12, 139 N.M. 12, 127 P.3d 548 (internal quotation marks and citation omitted). Mike did not request or receive any ruling with respect to the asserted violations of federal law. To the contrary, he took the position that these matters could only be addressed in federal court. As such, it is clear that Mike failed to preserve his arguments based on federal law for consideration by this Court.

## 2. Intervention—Gilbert

**{60}** Gilbert moved to intervene below. After conducting a hearing, the district court denied the motion on grounds that Gilbert did not claim an interest in the disputed funds. Mike seeks to challenge this ruling on appeal. We decline to consider the matter, chiefly because a timely appeal from the district court's order was not taken, *see Heimann v. Adee*, 122 N.M. 340, 348, 924 P.2d 1352, 1360 (1996) (observing that the denial of a petition to intervene is a final, appealable order), but also because Mike has failed to make a showing of entitlement to assert Gilbert's rights. *See generally ACLU*, 2008-NMSC-045, ¶ 31 (describing the showing that a litigant must make in order to assert the rights of third parties, including a demonstration that the third party is somehow hindered in his or her ability to protect his or her own interests).

## 3. Ruling on the Bank's Motion for Attorney Fees

**{61}** In connection with its motion for summary judgment, the Bank sought an award of attorney fees. In its order on the motion, the district court denied the request. Mike seeks to challenge this ruling on appeal, contending that insofar as the Bank had verbally withdrawn its request for attorney fees, the court should not have ruled on the merits. However, our review of the transcript reveals that the alleged "withdrawal" of the request for attorney fees was both ambiguous and conditional. We therefore reject the premise. Furthermore, we fail to see how the claimed error could be said to affect the substantial rights of the parties. *See generally* Rule 1-061 NMRA (stating the harmless error rule).

## 4. Ruling on the Alcantars' Notice of Withdrawal of Writ

**{62}** Finally, Mike contends the district court erred in granting the Alcantars' notice of withdrawal of the writ to the extent it was conditioned on a full release from any liability. As previously mentioned, however, the record contains nothing to suggest that the district court took action upon the conditional notice. Instead, the writ was withdrawn after the parties stipulated to the disbursement of the funds to Mike. We therefore perceive no factual basis for the claim of error.

## IV. CONCLUSION

**{63}** For the foregoing reasons, we affirm the award of summary judgment with respect to the claim for breach of fiduciary duty; we reverse the award of summary judgment with respect to the claims for conversion, negligence, and negligence per se; and we remand for further proceedings consistent with this Opinion.

**{64}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _Alcantar v. Sanchez_, Docket No. 28,436**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-IR | Interpleader |
| CP-IT | Intervention |
| CP-NO | Notice |
| CP-SJ | Summary Judgment |
| CP- TA | Third-party Actions |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-FD | Fiduciary Duty |
| | |
| **CN** | **CONTRACT** |
| CN-OF | Offer and Acceptance |
| | |
| **NG** | **NEGLIGENCE** |
| NG-BD | Breach of Duty |
| NG-NP | Negligence Per Se |

| | |
|---|---|
| NG-NG | Negligence, General |
| NG-TP | Third Parties |
| | |
| **RE** | **REMEDIES** |
| RE-GR | Garnishment |
| | |
| **TR** | **TORTS** |
| TR-CV | Conversion |
| TR-NG | Negligence |