The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 30, 2023</u>

**No. A-1-CA-38115**

**BARBARA MCANENY, M.D.; WILLIAM RITCHIE, M.D.; and WILLIAM LIAKOS, JR., M.D.,**

 Plaintiffs-Appellees,

and

**ALBERT KWAN, M.D.,**

 Withdrawn Plaintiff,

v.

**JENNIFER A. CATECHIS, in her capacity as New Mexico Interim Superintendent of Insurance; and the NEW MEXICO OFFICE OF THE SUPERINTENDENT OF INSURANCE,**

 Defendants-Appellants,

and

**RADIOLOGICAL ASSOCIATES OF ALBUQUERQUE, PA; JESSICA WILLIAMS, M.D.; CRAIG LASTINE, M.D.; THRETHA REDDY, M.D.; ADAM DELU, M.D.; CRAIG LANCE, M.D.; and THE DOCTORS COMPANY,**

 Intervenors-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Court Judge**

Marshall Law, P.C.
Stephen R. Marshall
Albuquerque, NM

Hunt Law Firm
Lee R. Hunt
Cynthia L. Zedalis
Santa Fe, NM

Stephen Durkovich
Santa Fe, NM

for Plaintiffs-Appellees

R. Alfred Walker, Legal Counsel
Richard B. Word, Legal Counsel
Santa Fe, NM

for Defendants-Appellants

Greenberg Traurig, LLP
Jon T. Neumann
Phoenix, AZ

for Intervenors-Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles K. Purcell
Albuquerque, NM

for Amicus Curiae Presbyterian Healthcare Services

# OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1} Plaintiffs filed a declaratory judgment action against the Superintendent of Insurance[1] and the Office of the Superintendent of Insurance (collectively, OSI) challenging the process used to allow certain hospitals to attain Qualified Health Provider (QHP) status under the Medical Malpractice Act (MMA), NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2021). The district court ruled in favor of Plaintiffs, and OSI appeals. Interestingly, however, OSI does not challenge the substance of the district court's judgment. Instead, it argues that events subsequent to entry of the judgment have rendered the matter moot. OSI asks us to dismiss the appeal, remand, and vacate the district court's judgment. OSI also asserts—for the first time—that Plaintiffs did not have standing to bring the action. In addition, OSI argues that the district court abused its discretion when it denied its motion to join the hospitals as necessary parties under Rule 1-019 NMRA.

---

[1]John Franchini was the named defendant as the Superintendent of Insurance in the district court proceedings. However, Franchini's tenure as Superintendent ended on December 31, 2019, after this appeal was filed. Jennifer A. Catechis was appointed Interim Superintendent, effective January 21, 2023. *See* NMSA 1978, § 59A-2-2.1(F) (2015, amended 2020) (providing for appointment of Interim Superintendent); *see also Denish v. Johnson*, 1996-NMSC-005, ¶ 47, 121 N.M. 280, 910 P.2d 914 (noting officials appointed to fill vacancies "will remain in office with all the powers of that office until the successor is duly qualified"). Pursuant to Rule 12-301(C)(1) NMRA, Catechis was "automatically substituted" as Defendant and the proceedings in this matter shall be pursued in her name for the duration of her tenure as Interim Superintendent.

{2}     We hold that Plaintiffs did have standing and that the district court did not abuse its discretion in initially refusing to join the hospitals. We disagree that the matter is now moot.

**BACKGROUND**

{3}     Plaintiffs are three long-time practicing physicians in New Mexico. Plaintiffs asserted that they—along with the other doctors in their respective practice groups—have held QHP status and have been insured under the MMA for over twenty years. As such, they have been surcharged by OSI and made yearly contributions to the Patient's Compensation Fund (the Fund) since they became QHPs. Plaintiffs generally asserted that they depend on the Fund to pay their portion of the professional liability obligations that exceed their mandated private insurance coverage, and that the solvency of the Fund is threatened by the decision of OSI to allow hospitals to qualify as QHPs and share in the benefits of the Fund.

{4}     Plaintiffs asserted that the Fund experienced an accelerating actuarial deficit in the years prior to the filing of their complaint which resulted in OSI imposing two significant surcharges on physician QHPs. Plaintiffs also alleged that the surcharges imposed on physician QHPs would "dramatically increase" as the Fund "takes responsibility for the risk and liability" of the hospitals and outpatient care facilities illegally granted QHP status by OSI.

{5} Plaintiffs asserted that OSI acted improperly in three ways when it granted the hospitals and outpatient facilities QHP status. First, they argued that it did not comply with the Administrative Procedures Act (APA), NMSA 1978, §§ 12-8-1 to -25 (1969, as amended through 1999).[2] Specifically, they argued that the APA required OSI to publically propose and adopt rules reflecting how it would carry out its responsibilities under the MMA with regard to assessing the risks posed by hospitals before they were allowed to qualify as QHPs. Second, they asserted that OSI failed to comply with NMSA 1978, Section 59A-2-10 (1984) of the New Mexico Insurance Code in that it did not create and sign an order stating the grounds on which the order is based. *See* § 59A-2-10(A), (B). Third, Plaintiffs asserted that OSI violated its common law and statutory duties as the trustee of the Fund when it failed to act in compliance with the APA and the Insurance Code.

{6} After OSI filed its answer, the parties filed cross-motions asking the district court to decide the matter on the pleadings. The arguments made in the motions mirrored the assertions in the pleadings, with OSI specifically asserting that the APA and the Insurance Code did not apply to its duties under the MMA and that its actions in granting QHP status were merely ministerial. After hearing oral argument on the motions and taking the matter under advisement, the district court reconvened the

---

[2]OSI was made subject to the APA in 2013. 2013 N.M. Laws, ch. 74, § 13; *see* NMSA 1978, § 59A-2-8(J) (2013, amended 2021 as § 59A-2-8(A)(10)).

parties and announced its decision orally. The district court agreed with the Plaintiffs' legal position, rejecting OSI's arguments that the APA and the Insurance Code did not apply to its actions under the MMA and that its actions were ministerial. The district court, however, was not convinced that the Plaintiffs' requested remedy—declaring all of OSI's actions void—was appropriate. Thus, the district court asked for proposed forms of a dispositive order from the parties. Plaintiffs' submission in response did not include a proposed form of order. Rather it simply reiterated Plaintiffs' assertion that a blanket order voiding OSI's actions was necessary. OSI submitted a form of order that ultimately provided much of the verbiage found in the district court's judgment.

{7} At this point in an opinion we would normally delve into the specific provisions of the judgment appealed. It is not necessary to do so here because, again, OSI has chosen not to challenge the substance of the judgment's resolution of the legal issues presented or the district court's remedy. Thus, those issues are not before us based on OSI's appeal.

{8} Plaintiffs—appellees herein—ask us to reverse the judgment on a number of grounds, including: (1) the district court erred in not voiding all of OSI's actions; (2) the district erred in drawing a distinction between actions after and before OSI was made subject to the APA; and (3) the district court erred in considering the effect of its decision on entities and parties not before it. But Plaintiffs did not file a cross-

4

appeal. Under Rule 12-201(C) NMRA, absent a cross-appeal an appellee may raise issues for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court may reverse in whole or in part as a result of the direct appeal. Given that the substance of the judgment was not challenged by OSI on direct appeal, we will not address Plaintiffs' arguments for reversal.[3] We now turn to the issues raised by OSI: standing, joinder, and mootness.

---

[3]Plaintiffs filed a notice of appeal from the district court's judgment on August 13, 2021. Plaintiffs' Notice of Appeal, *McAneny v. Catechis*, D-101-CV-2017-02140 (1st. Jud. Dist. Ct. Aug. 13, 2021). Plaintiffs' appeal was assigned case number A-1-CA-39904. Plaintiffs had previously filed a motion to dismiss OSI's appeal for lack of finality in this case. Plaintiffs'-Appellees' Motion to Dismiss Appeals, *McAneny v. Catechis*, A-1-CA-38115 (N.M. Ct. App. June 6, 2019). This Court denied the motion to dismiss. Order Granting Motion for Leave to File Reply and Denying Motion to Dismiss, *McAneny v. Catechis*, A-1-CA-38115 (N.M. Ct. App. Sept. 3, 2019). Plaintiffs filed two motions asking this Court to reconsider its decision with regard to finality. Motion for Reconsideration on Plaintiffs-Appellees' Motion to Dismiss, *McAneny v. Catechis*, A-1-CA-38115 (N.M. Ct. App. Sept. 13, 2019); Physicians' Second Motion for Reconsideration of Order Denying Motion to Dismiss, *McAneny v. Catechis*, A-1-CA-38115 (N.M. Ct. App. Sept. 17, 2020). The second motion for reconsideration was denied by this Court on July 29, 2021. Order Denying Second Motion to Reconsider and Motion to Intervene or, in the Alternative, For Leave to File Amicus Curiae, *McAneny v. Catechis*, A-1-CA-38115 (N.M. Ct. App. July 29, 2021). Plaintiffs' docketing statement asserted that this Court's denial of their motions for reconsideration triggered the time at which they could appeal the district court's January 31, 2019 order. Plaintiffs-Appellants' Docketing Statement, *McAneny v. Catechis*, A-1-CA-39904 (N.M. Ct. App. Aug. 18, 2021). Plaintiffs did not raise the issue of finality in their briefing in this case and we therefore do not address the matter again in this opinion. Plaintiffs appeal in No. A-1-CA-39904 has been dismissed as untimely contemporaneously with the filing of this opinion.

**Discussion**

**I.  Standing**

{9}  OSI argues for the first time in this litigation that Plaintiffs did not have standing to bring this case. OSI included a lack-of-standing affirmative defense in its answer, but did not pursue it in the litigation below. We address the argument because our courts have chosen to treat lack of standing as a "potential jurisdictional defect, . . . which may not be waived, and may be raised at any stage of the proceedings." *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 20, 130 N.M. 734, 31 P.3d 1008 (internal quotation marks and citations omitted). "Whether a party has standing to bring a claim is a question of law which we review de novo. . . . For purposes of ruling on a motion to dismiss for want of standing, both trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *N.M. Gamefowl Ass'n v. State ex rel. King*, 2009-NMCA-088, ¶ 12, 146 N.M. 758, 215 P.3d 67 (internal quotation marks and citations omitted).

{10}  New Mexico courts have traditionally looked to the federal standing analysis for guidance, even though the "constitutional dimensions" of federal standing are absent from our state jurisprudence. *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 10, 144 N.M. 471, 188 P.3d 1222. As such we examine the complaint to determine whether it demonstrates "(1) an injury in fact, (2) a causal relationship

between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *See Prot. & Advoc. Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 18, 145 N.M. 156, 195 P.3d 1 (internal quotation marks and citation omitted). OSI's argument focuses only on the injury in fact aspect of the analysis, and we will similarly limit our review.

{11} OSI argues that Plaintiffs did not allege an injury in fact to them. We disagree. The complaint asserted that the actuarial health of the Fund deteriorated significantly in the year prior to the date it was filed. The complaint attributed a large part of the decline to the potential costs of meeting the heightened risk of losses from claims against hospitals. The complaint also alleged that Plaintiffs were assessed significant surcharges as a result of the actuarial decline of the Fund and that the continuing deterioration of the Fund will require dramatic increases in the future. These assertions are sufficient to meet the injury in fact requirement of the standing analysis. While Plaintiffs did not quantify the dollar amount of the increased surcharges, a reasonable inference can be made that the number is not de minimis. In any event, the injury in fact requirement is met "even when the extent of the alleged injury is slight . . . or the allegation is made by an organization on behalf of its members." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-005, ¶ 12, 126 N.M. 788, 975 P.2d 841. OSI's argument that these allegations are "conjectural

and hypothetical" runs counter to the obligation to view the complaint in favor of the complaining party. *See N.M. Gamefowl Ass'n*, 2009-NMCA-088, ¶ 12.

{12}     As a corollary to the argument that Plaintiffs have suffered no personal damage, OSI asserts that the complaint only alleges damage to the Fund, and notes that Plaintiffs are not beneficiaries of the Fund. We disagree. It is accurate that Plaintiffs do not receive payments directly from the Fund. The Fund is used to pay patients injured by medical malpractice a portion of their damages. Section 41-5-7(E) (1992, amended 2021). But, the Fund is part and parcel of the MMA and the structure created therein to help maintain a viable system of medical care and claim resolution in New Mexico. Section 41-5-25(A) (1997, amended 2021); *see also Baker v. Hedstrom*, 2013-NMSC-043, ¶ 17, 209 P.3d 1047 ("To give effect to the purpose of the MMA, the Legislature created a balanced scheme to encourage health care providers to opt into the [MMA] by conferring certain benefits to them, which it then balanced with the benefits it provided to their patients."). To separate the Fund from the MMA structure is not realistic. OSI admitted in its answer to the complaint that, "physicians are essential beneficiaries of the [MMA]." As "essential beneficiaries" of the MMA, Plaintiffs have a strong claim to standing to challenge actions that threaten its viability, including threats to the Fund.

## II.     Joinder

{13}     Eleven months after the complaint in this matter was filed, OSI filed a motion to join necessary parties pursuant to Rule 1-019, or in the alternative to dismiss the case. OSI argued that at a minimum the hospitals whose inclusion in the Fund was threatened—if Plaintiffs were successful—should be joined as necessary parties because the hospitals faced potentially dire consequences if the district court ruled in Plaintiffs' favor.

{14}     Plaintiffs' response was multifaceted. They noted that the case as framed by the complaint presented strictly legal issues concerning the power of OSI to do what it did in allowing the hospitals to acquire QHP status. They posited that OSI was best able to defend its authority and actions. Analogizing to *State ex rel. Clark v. Johnson*, 1995-NMSC-048, 120 N.M. 562, 904 P.2d 11, Plaintiffs questioned what the hospitals could add to the legal arguments surrounding the issue. Plaintiffs also noted that under OSI's approach, patients and other providers would also be necessary parties, but they too would not be able to provide material help in deciding the legal issues presented. Finally, Plaintiffs noted that the hospitals themselves had not asked to intervene.

{15}     The district court denied the motion. Because "[t]he question of indispensability is a factual question that the district court determines . . . in its

discretion," we apply the abuse of discretion standard of review. *See Srader v. Verant*, 1998-NMSC-025, ¶ 20, 125 N.M. 521, 964 P2d 82.

{16} The district court decided that given the nature of the case—framed as a purely legal question—complete relief could be accorded among the present parties. Focusing on Rule 1-019(A)(2)(a), the district court concluded that the disposition of the case in the absence of the hospitals would not as a practical matter impair their ability to protect their interests. Noting that the hospitals had not themselves requested intervention, the district court deduced that they did not think their interests were substantially threatened. Finally, the district court observed that it was "not convinced the alleged necessary parties [would] present any substantive argument different from the position capably and adequately represented by [OSI]."

{17} Notably, the district court did allow the hospitals to file a consolidated amicus brief. The hospitals did so and filed a brief opposing Plaintiffs' motion for judgment on the pleadings and a brief supporting OSI's suggested form of judgment.

{18} Relevant to the circumstances of this case, Rule 1-019 requires joinder of a person if:

> (1) in his absence complete relief cannot be accorded among those already parties; or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>
> > (a) as a practical matter impair or impede his ability to protect that interest.

As this Court has previously noted, the determination whether Rule 1-019 mandates joinder is a case specific, context-driven inquiry. *State ex rel. Blanchard v. City Comm'rs of Clovis*, 1988-NMCA-008, ¶ 10, 106 N.M. 769, 750 P.2d 469; *id.* ¶¶ 10, 11 (holding that applicants for a city planner position need not be joined in a suit seeking details in their applications where the city-defendant had not shown that the applicants had claimed any right to privacy or confidentiality recognized at law, had not shown that the interests of the applicants would be affected by the judgment of the court, and had not shown that joinder was needed for a just adjudication of the action).

{19} Two cases from our Supreme Court illustrate the point. In *Clark*, the petitioners filed a "writ of mandamus or writ of prohibition and declaratory judgment" challenging the authority of the governor to enter into tribal gaming compacts with a number of New Mexico tribes and pueblos. 1995-NMSC-048, ¶¶ 1, 2. The governor argued that the tribes and pueblos were indispensable parties given that they were signatories to the compacts. *Id.* ¶ 21. Our Supreme Court disagreed, noting:

> In a mandamus case, a party is indispensable if the "performance of an act to be compelled by the writ of mandamus is dependent on the will of a third party, not before the court." *Chavez v. Baca*, [1943-NMSC-052, ¶ 31,] 47 N.M. 471, . . . 144 P.2d 175[]. That is not the case here. Petitioners seek a writ of mandamus against the Governor of New Mexico, not against any of the tribal officials. Resolution of this case requires only that we evaluate the Governor's authority under New Mexico law to enter into the compacts and agreements absent

11

legislative authorization or ratification. Such authority cannot derive from the compact and agreement; it must derive from state law. This is not an action based on breach of contract, and its resolution does not require us to adjudicate the rights and obligations of the respective parties to the compact.

*Johnson*, 1995-NMSC-048, ¶ 21.

{20} In contrast, our Supreme Court decided that a pueblo was "necessary" to a lawsuit asserting breach of contract and insurance bad faith claims filed against that pueblo's insurer. *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶¶ 1, 42, 132 N. M. 207, 46 P.3d 668. The Court noted that "[t]he propriety or impropriety of [the pueblo's insurer]'s performance under the insurance policy is of substantial interest to [the pueblo], which has paid for the insurance protection in question and on whose behalf [the pueblo's insurer] acts." *Id.* ¶ 43. The Court also noted that in a liability action, the pueblo and its insurer would presumably "share an identity of interest in the outcome of the litigation as [the pueblo's insurer] has a duty to defend its insured." *Id.* ¶ 45. However, because the plaintiff there was suing the insurer for alleged violations of its duties to the pueblo, the Court would "not presume that [the pueblo's insurer] can or will fully represent the interests of [the pueblo] under the policy, and thus, [the pueblo] is necessary to the litigation." *Id.*

{21} The situation in this case aligns more closely with *Clark*. First, the complaint here challenges the authority of OSI to allow the hospitals to acquire QHP status in the manner it proceeded. The challenge to OSI's actions and authority did not depend

12

to any extent on the "will" of the hospitals. *See Clark*, 1995-NMSC-048, ¶ 21. Second, when the complaint was filed there was no apparent conflict or divergence of interests between OSI and the hospitals. OSI was fully—perhaps uniquely—capable of defending itself. The district court could be confident that the matter would be properly litigated without the hospitals' joinder.

{22}    Finally, we see no prejudice to the hospitals from the district court's order. They did not move to be joined, yet they were allowed to appear as amici. OSI does not point to anything the hospitals could or would have done differently had they been joined. In short, we perceive no abuse of discretion by the district court. Complete relief could be accorded among the existing parties. And, as a practical matter, nonjoinder did not impair or impede the hospital's ability to protect their interests.

## III.   Mootness

{23}    OSI asks us to dismiss the appeal, arguing that it is moot because the Legislature addressed the Fund deficit issue by amending the MMA and because OSI complied with the judgment by promulgating APA compliant rules addressing the process by which it will hereafter qualify hospitals and other outpatient care facilities as QHPs. Problematically, it also asks that we vacate the judgment below. We disagree that the appeal is moot.

**{24}** As a general matter a case is moot when no actual controversy exists and the court cannot grant relief to the parties. *Gunaji*, 2001-NMSC-028, ¶ 9; *id.* ¶¶ 9-11 (holding that the particular election contest at hand was moot because the terms of office in issue had expired, but addressing the arguments made because the case presented issues of substantial public interest that were capable of being repeated).

**{25}** There are a number of ways a case may become moot. Legislative action specifically addressing an issue in a case is an example. Our Supreme Court held that a case challenging the authority of a municipality to exercise eminent domain over an existing utility service was mooted when the Legislature gave the city-defendant specific authority to proceed. *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶¶ 14-17, 124 N.M. 640, 954 P.2d 72. Similarly, this Court decided that a challenge to a municipal sex offender ordinance was moot after the Legislature passed a statute prohibiting local public bodies from adopting or amending laws addressing sex offender registration and notification. *ACLU of NM v. City of Albuquerque*, 2006-NMCA-078, ¶¶ 6-8, 139 N.M. 761, 137 P.3d 1215.

**{26}** Settlement of all issues in a case by the parties will usually result in mootness. *Cobb v. Gammon*, 2017-NMCA-022, ¶¶ 12, 13, 389 P.3d 1058. There are some situations, however, in which our courts have exercised discretion to decide an issue regardless of the parties' settlement. *See Snow v. Warren Power & Mach. Inc.*, 2015-NMSC-026, ¶¶ 11-16, 354 P.3d 1285.

14

**{27}** Compliance with a judgment from which an appeal has been taken may also result in mootness. *See Patterson v. City of Albuquerque*, 1983-NMCA-037, ¶ 9, 99 N.M. 632, 661 P.2d 1331. But compliance will not result in mootness if there are issues and requests for relief not cured by compliance. *Alcantar v. Sanchez*, 2011-NMCA-073, ¶ 12, 150 N.M. 146, 257 P.3d 966. The analysis is necessarily contextual. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.2.2, Westlaw (3d ed. database updated April 2022). Compliance that does not indicate an intent to settle a matter—or in the case of an injunction, compliance that can be undone—does not support a finding of mootness. As the Colorado Court of Appeals has observed, the test of whether an appeal is moot is whether the party acted voluntarily or because of the actual or implied compulsion of judicial power. *FCC Constr., Inc. v. Casino Creek Holdings, Ltd.*, 916 P.2d 1196, 1198 (Colo. App. 1996).

**{28}** OSI's arguments on mootness fail on all fronts. It asserts that the 2021 legislative action addressing the actuarial soundness of the Fund moots all issues related to the Fund. *See* § 41-5-25(F). The legislation, however, did not address the applicability of the APA and the Insurance Code to OSI's conduct in qualifying entities as QHPs. *Id.* Thus, it did not specifically address the legal issues decided by the district court. Issues other than the method used to bring the Fund to actuarial health were not mooted by the Legislature's activity.

15

{29} OSI also asserts that its promulgation of rules and regulations pursuant to the APA and the Insurance Code as required by the district court's judgment moots any appeal from that portion of the judgment. At oral argument, however, counsel for OSI conceded that adoption of the rules and regulations was undertaken because "[OSI] was told to." Counsel also made clear at oral argument that he did not want to concede that the district court was correct in any of its legal conclusions concerning the applicability of the APA and Insurance Code. In the same breath, however, counsel for OSI conceded that it was seeking no relief as a result of any error by the district court in that regard.

{30} The conclusion we draw is that OSI's compliance activities were undertaken under judicial compulsion rather than voluntarily, and that its decision not to challenge the legal merits of the judgment was made to provide tactical support for its mootness argument. To accept OSI's arguments with regard to mootness and vacatur would result in destruction of a judgment OSI chose not to challenge on its merits. OSI would achieve its aim to escape the legal effects of the district court's judgment without subjecting its arguments to scrutiny by this Court. Such a strategy rarely results in the outcome sought.

**CONCLUSION**

{31} We affirm the district court's rulings as to standing and Rule 1-019 joinder. We also conclude that the doctrine of mootness does not apply to the circumstances

of this case. Given that the parties did not provide argument on the merits of OSI's responsibilities under the APA and the Insurance Code, we do not address them, and we dismiss the appeal as to that portion of the district court's judgment.

{32}　**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge,**
**retired, sitting by designation.**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**KATHERINE A. WRAY, Judge**